**In re THOMAS COMMUNICATIONS, INC.**

Civ. A. Nos. 2:93–0177, 2:93–1236.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 11, 1994.

John A. Rollins, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, WV, for appellant.

Raymond G. Dodson, Dodson, Riccardi & Lutz, Stephen L. Thompson, Cecil, Barth & Thompson, Charleston, WV, Robert W. Friend, Parkersburg, WV, John H. Kamlowsky, Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, Wheeling, WV, Christopher S. Smith, Hoyer, Hoyer & Smith, Richard M. Francis, Bowles, Rice, McDavid, Graff & Love, Debra A. Wertman, Charleston, WV, R. Scott Clarke, U.S. Dept. of Justice, Trial Atty., Tax Div., Washington, DC, and Gary L. Call, Asst. U.S. Atty., Charleston, WV, for interested parties.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This is a consolidated appeal from two Orders of the United States Bankruptcy Court for the District. Both Orders arose from the pending bankruptcy proceeding of Thomas Communications, Inc. ("Thomas") under Chapter 11 of the Bankruptcy Code ("Code"). In the first Order at issue, entered February 4, 1993, the Bankruptcy Court approved the sale of all assets in Thomas' bankruptcy estate free and clear of liens and encumbrances, except accounts receivable. In the second Order, entered November 30, 1993, in an adversary proceeding resulting from the bankruptcy case, the Bankruptcy Court determined the extent and priority of liens on proceeds derived from the sale of assets. 161 B.R. 621.

The paramount issue of this appeal is whether a secured creditor may perfect a lien on sale proceeds of a broadcast license issued by the Federal Communications Commission ("FCC").

### I.

The facts are undisputed. Thomas operated two radio stations as a debtor-in-possession, and held a separate broadcasting license for each station issued by the FCC. On March 11, 1992, Thomas filed a petition for relief under Chapter 11 of the Code. The Bankruptcy Court appointed a trustee, who operated the stations until the Court approved their sale.

At the time it filed its bankruptcy petition, Thomas was about $3.6 million dollars in debt. Of this amount, secured claims were asserted by Allied Financial Corporation II and its related companies ("Allied") in the amount of approximately $2,608,000; by the Bank of Paden City for $79,000; and by the Internal Revenue Service ("IRS") in the amount of $102,191. The balance of $800,000 in claims was held by unsecured trade creditors or unsecured creditors whose collateral was subject to the prior lien interests of the other parties.

Allied's notes and security interests were perfected by UCC–1 financing statements covering property, including "licenses (including specifically but without limitation the F.C.C. broadcast licenses ... all subject to F.C.C. approval of transfer), accounts receivable, and all tangible and intangible assets now owned or later acquired." The Bank's security interest, likewise perfected by filing of a UCC–1 financing statement, extended to the debtor's accounts receivable and "all gen-

eral intangibles I own now or may own in the future including, but not limited to ... permits and franchises...."

The IRS filed tax liens against Thomas on March 15, 1991 and May 21, 1991. The IRS claimed entitlement to a first-priority lien on Thomas' accounts receivable earned between the forty-sixth day after it filed notice of the tax liens and the date Thomas filed the bankruptcy petition.

In December, 1992, the trustee moved for the Bankruptcy Court's approval to sell all assets of the estate. The FCC licenses and the two radio stations were to be sold as ongoing businesses. Thomas objected to the proposed sale, claiming among its grounds that the real asset being sold was the FCC license rights to operate the radio stations; Thomas claimed its creditors could not hold valid, enforceable liens on the broadcast licenses.

On February 4, 1993, the Bankruptcy Court approved the sale of each of the radio stations and their associated property and licenses, but reserved ruling on the validity of liens claimed by certain parties. That Court ordered the sale free of liens and encumbrances, with all liens attaching to the sale proceeds "with the same validity and priority, and to the same extent, as they attached to the assets being sold." The Court later approved the sale of the broadcasting licenses subject to FCC approval. Thomas appeals the Bankruptcy Court's approval.

On April 7, 1993, Thomas filed an adversary proceeding seeking a declaratory judgment concerning the various lien issues relating to the proceeds of the sale.[1] The Bankruptcy Court consolidated the unresolved lien issues from the Order of Sale with the adversary proceeding.

On November 30, 1993, after trial and briefing, the Bankruptcy Court issued a Judgment Order and Memorandum Opinion resolving the outstanding issues. It held, *inter alia*, Allied and the Bank had secured claims against "the proceeds resulting from the F.C.C.-approved sale of the broadcasting licenses of the debtor, Thomas Communications, Inc.," and, further, the Bank had a prior perfected interest over Allied in the sale of proceeds relating to accounts receivable and the broadcasting licenses. The Bankruptcy Court also determined the statutory tax lien held by the IRS was superior on certain accounts receivable to those held by the Bank and Allied.

In this appeal, Thomas argues the Bankruptcy Court erred in determining the extent and priority of liens on the proceeds of the sale, particularly as they relate to the broadcast licenses, and in approving the sale of the radio stations.

## II.

On appeal, a district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings. *Rule 8013, Bankruptcy Rules.* The district court may not set aside the bankruptcy court's findings of fact unless clearly erroneous, and must give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. *Id.; Harman v. Levin,* 772 F.2d 1150, 1153 (4th Cir.1985). Appellate review of issues of law determined by the bankruptcy judge is based on a *de novo* standard. *Rosen v. Associates Financial Services Co.,* 17 B.R. 436, 437 (D.S.C.1982).

## III.

The Bankruptcy Court held a creditor may perfect a security interest in proceeds derived from the sale of an FCC broadcasting license. Thomas objects to this conclusion, arguing in substance there is no practical difference between the proceeds derived from the sale of the licenses and the licenses themselves, for purposes of analyzing whether a valid lien exists. Because FCC policy prohibits a licensee from giving a security interest in a license, *In re Merkley,* 94 F.C.C.2d 829, 830–31 (1983), Thomas argues the policy extends to preclude security interests in proceeds from sale of a license.

---

1. The Bankruptcy Court noted Thomas was no longer a debtor-in-possession when it brought the adversary proceeding, but concluded the issues raised in the proceeding would arise regardless of which party brought the action. The Court for that reason decided to resolve the case as it was postured.

The only court of this Circuit to address the issue rejected this precise argument. *In re Ridgely Communications, Inc.,* 139 B.R. 374 (Bankr.D.Md.1992). Noting the FCC has recognized that rights between licensees and the FCC are distinguishable from rights between the licensee and a private third party, the *Ridgely* court reasoned this distinction permits a licensee to receive a profit from the transfer of a license to a third party. *Ridgely,* 139 B.R. at 377 (citing *In re Bill Welch,* 3 F.C.C.R. 6502 (1988)). The *Ridgely* court held:

> [A] creditor may perfect a security interest in a debtor's F.C.C. broadcasting license, limited to the extent of the licensee's proprietary rights in the license vis-a-vis private third parties. The right of the licensee crucial to this decision (and the only right recognized by the Court in this case) is the right of the creditor to claim proceeds received by the debtor licensee from a private buyer in exchange for the transfer of the license to that buyer. The right to receive such proceeds is a private right of the licensee that constitutes a proprietary interest in which a creditor may perfect a security interest.

*Ridgely,* 139 B.R. at 379. *Accord In re Atlantic Business Community Dev. Corp.,* 994 F.2d 1069, 1074–75 (3d Cir.1993); *State Street Bank & Trust Co. v. Arrow Communications,* 833 F.Supp. 41, 48 (D.Mass.1993).

If there was room for doubt about the FCC's position regarding liens on proceeds from sale of broadcast licenses when the parties briefed this appeal, there is not now. In a decision released February 24, 1994, the FCC stated its position succinctly:

> The Commission has a policy against a licensee giving a security interest in a license. The reason for the policy is that the Commission's statutory mandate requires it to approve the qualifications of every applicant for a license. If a security holder were to foreclose on the collateral license, by operation of law, the license could transfer hands without the prior approval of the Commission.
>
> ... In contrast, giving a security interest in the proceeds of the sale of a license does not raise the same concerns. When a licensee gives a security interest in the proceeds of the sale of the system, includ-

ing the license, the licensee's creditor has rights with respect to the money or other assets the licensee receives in exchange for the system and license. The creditor has no rights over the license itself, nor can it take any action under its security interest until there has been a transfer which yields proceeds subject to the security interest. Thus, when a creditor exercises his security interest, the licensee will no longer be holding the license.

*In re Walter Cheskey,* 9 F.C.C.R. 986 (Feb. 24, 1994) (citations omitted) (citing *Ridgely,* 139 B.R. 374).

Acknowledging that sale of the broadcast licenses was subject to FCC approval, the Bankruptcy Court noted the security interest claimed by the creditors in this case would not interfere with any rights or obligations within the relationship of Thomas and the FCC. Said the Court: "Subject to the Commission's approval of sale, the only concern here is the priority between private third parties regarding their entitlement to proceeds of sale. Upon the F.C.C.'s approval of the transfer of the broadcasting licenses, the only thing left for resolution is a determination of which party is entitled to the proceeds realized from the transfer. To the extent that either the Bank or the Allied companies may enforce a claim to proceeds resulting from an F.C.C.-approved sale of the licenses, the creditors may hold a perfected security interest."

Thomas relies on *In re Tak Communications, Inc.,* 138 B.R. 568 (W.D.Wis.1992), *aff'd,* 985 F.2d 916 (1993), as support for the proposition there is no significant distinction between a lien on proceeds from sale of a broadcast license and a lien on the license itself. In *Tak,* the district court declined to affirm the validity of bank liens on broadcasting licenses, stating broadly that the FCC prohibits liens in broadcasting licenses as a form of security interest generally.

Notably, the liens at issue in *Tak* were not asserted merely against the proceeds of the licensee's transfer of the licenses, but rather gave the banks the right "to take possession of the collateral," including the licenses. *Tak,* 138 B.R. at 570. The banks in *Tak* sought a declaratory judgment that they had

a perfected security interest in "Tak's rights under the FCC licenses and in Tak's right to sell the station as a going concern." *Id.* at 571.

As recognized in *Arrow Communications,* 833 F.Supp. at 46, the claims by the banks in *Tak* "squarely interfered with the FCC's regulation of its licensee, and conflicted with the FCC's policy that the licensee must be able to transfer his license freely." (Footnotes omitted). In contrast, the security interest asserted here poses no threat to the independence of the bankrupt licensee or its relationship with the FCC.

Moreover, the district court's analysis in *Tak* was grounded largely on its refusal to distinguish between security interests in proceeds from the sale of broadcast licenses, and in the licenses themselves. Failing to draw this distinction, the court based its holding on the FCC's policy against allowing security interests in broadcast licenses. *Tak,* 138 B.R. at 577. To the extent the *Tak* decision arises from FCC policy, it was abrogated by the FCC's new decision in *In re Walter Cheskey,* 9 F.C.C.R. 986, clarifying that the FCC has no policy against security interests in proceeds from the sale of a broadcast license.[2]

This Court's *de novo* review of the Bankruptcy Court's decision reveals the Bankruptcy Court correctly determined the creditors in this case could possess a security interest in proceeds from the sale of broadcast licenses issued by the FCC. Accordingly, the Court **AFFIRMS** the ruling of the Bankruptcy Court on this point.

### IV.

Thomas next asserts the Bankruptcy Court abused its discretion in granting the sale and defining its terms because its findings upon the sale of the broadcast licenses were not supported by the evidence. The thrust of this argument is that the Trustee failed adequately to demonstrate the proposed sales were in the best interest of Thomas' estate. The Court is of the opinion

Thomas failed to demonstrate the findings below were clearly erroneous.

Accordingly, the Court **AFFIRMS** the Bankruptcy Court's approval of the sale of assets in Thomas' bankruptcy estate.

### V.

These actions are **DISMISSED** and stricken from the docket.

---

2. This fact is made clear by the Court of Appeals's decision in *Tak* affirming the district court: "Whatever the practical benefits might be to creditors in permitting these interests, even to the limited extent permitted by *Ridgely,* we agree with the district court that the FCC has consis-

tently and unequivocally refused to recognize such interests.... Whether to permit such interests is, as the parties agree, a matter for the FCC rather than the courts to decide." *Tak,* 985 F.2d at 918–19.