**In re PBR COMMUNICATIONS SYSTEMS, INC., Debtor.**

**PBR COMMUNICATIONS SYSTEMS, INC., Plaintiff,**

v.

**JEFFERSON BANK, State Chartered Banking Institution, Defendant.**

**Bankruptcy No. 91–33809–RAM. Adv. No. 94–0310–RAM.**

United States Bankruptcy Court, S.D. Florida.

Sept. 13, 1994.

David M. Hunsaker, Putbrese & Hunsaker, McLean, VA, Robert C. Furr, Boca Raton, FL, for PBR Communications, Inc.

Jeffrey F. Brotman, Ledgewood Law Firm, Philadelphia, PA, for Jefferson Bank.

### MEMORANDUM OPINION
ROBERT A. MARK, Bankruptcy Judge.

This adversary proceeding was brought by the Debtor, PBR Communications Systems, Inc. ("Debtor"), to determine the validity of the claim of Jefferson Bank (the "Bank") against the proceeds generated from the sale of the Debtor's assets. The Bank seeks entry of a summary judgment determining that it has a valid and perfected security interest in the sale proceeds including that portion of the proceeds attributable to the sale of the Debtor's Federal Communication Commission ("FCC") broadcast license. The Court has reviewed the initial memorandum and supplemental memorandum filed by the

Bank, the memorandum in opposition to the motion filed by an unsecured creditor, Putbrese & Hunsaker, and the arguments of counsel presented at a June 9, 1994 hearing on the motion.

The sole issue presented is whether a creditor may hold a security interest in the proceeds generated from the sale of a broadcast license. Since the Court finds that such a security interest may be granted and enforced against sale proceeds, summary judgment will be granted.

### FACTUAL BACKGROUND

The relevant facts are undisputed. The Debtor owned and operated a commercial radio station in Miami, Florida. Jefferson Bank made a loan in the original principal amount of $800,000 to the Debtor in January, 1988. The Debtor granted Jefferson Bank a security interest in all of the Debtor's tangible and intangible personal property, including its FCC license, and the proceeds and products therefrom. To perfect its security interest, Jefferson Bank filed a UCC–1 financing statement with the Secretary of State of Florida on January 20, 1988.

In November, 1991, the Debtor filed a voluntary petition commencing this Chapter 11 case. On March 9, 1994, with FCC approval and authorization from this Court, the Debtor sold its radio station and transferred its rights under its FCC license. The proceeds [1] of that sale, in the form of cash and a promissory note from the purchaser, are being held by the Debtor pending determination of Jefferson Bank's rights.

### DISCUSSION

The Debtor purported to grant to the Bank a security interest in its FCC license and the proceeds thereof. Since the Bank's claim exceeds the amount of the sale proceeds, if its security interest is duly perfected and legally enforceable, the Bank is entitled to all of the proceeds resulting from the sale, and therefore entitled to summary judgment. The sole issue is whether a security interest in the proceeds from the sale of an FCC

license is enforceable. As discussed below, there is authority for and against enforcing such a security interest.

### A. The Thomas/Ridgely Decisions

Facts almost identical to this case existed *In re Thomas Communications, Inc.*, 161 B.R. 621 (Bankr.S.D.W.Va.1993), *aff'd*, 166 B.R. 846 (S.D.W.Va.1994). Prior to filing its Chapter 11 case, Thomas Communications, Inc. operated two radio stations in West Virginia. Two secured creditors claimed an interest in the debtor's FCC broadcasting licenses. Both creditors had properly filed UCC–1 financing statements specifically naming the licenses as collateral.

During the *Thomas* bankruptcy, the court authorized the trustee to sell the debtor's assets, including the broadcasting licenses. The primary issue which the *Thomas* court considered was the same issue presented here: whether the creditors held properly perfected security interests in the proceeds generated from an FCC approved sale of the broadcast license. The *Thomas* court concluded that a creditor may hold a perfected security interest in proceeds from the sale of a broadcast license.

■ In reaching that decision, the court held, as a threshold matter, that the licenses were property of the bankruptcy estate pursuant to Section 541 of the Bankruptcy Code. The court noted that the FCC has traditionally had a policy against acknowledging ownership interests in broadcast licenses, but also observed that the FCC has recognized that a licensee possesses some property interest in a broadcasting license, citing *In re Ridgely Communications, Inc.*, 139 B.R. 374 (Bankr.D.Md.1992). While this proprietary interest does not allow any party to assert any rights contrary to the FCC's regulatory powers, the holder of a license may receive proceeds from the transfer of the license to a third party.

■ Having concluded that the Debtor has a property interest in the FCC License, the *Thomas* court agreed with *Ridgely* and held

---

1. Barnett Bank held a mortgage on Debtor's property and has already received its share of the proceeds.

that a security interest can attach[2] to that property interest. The Court summarized its conclusion as follows:

> The right of the creditor crucial to this decision is the right of the creditor to claim proceeds received by the debtor licensee from a private buyer in exchange for the transfer of the license to that buyer …

*Thomas,* 161 B.R. at 634, citing *Ridgely* 139 B.R. at 379.

■ Thus the *Ridgely* and *Thomas* cases recognize the validity of a security interest in a broadcast license, limited to the licensee's property rights in relation to third parties. This limited interest allows for the enforceability of a security interest in the proceeds of an FCC approved sale. *See also In re Atlantic Business and Community Development Corp.,* 994 F.2d 1069 (3d Cir.1993) (allowing IRS to assert tax lien against the proceeds of a sale of the debtor's FCC license).

## B. *The Tak Decision*

*Matter of Tak Communications, Inc.,* 985 F.2d 916 (7th Cir.1993) disagreed with the reasoning of *Ridgely.* *Tak* involved the Chapter 11 reorganization of a company which held several FCC broadcast licenses. The debtor in *Tak* borrowed money from several banks and granted to those banks security interests in all its assets, including the FCC licenses. The bankruptcy court held that those security interests were invalid as to the licenses. The district court affirmed, 138 B.R. 568 (W.D.Wis.1992), and the banks then appealed to the Court of Appeals for the Seventh Circuit which also affirmed, adopting the reasoning of the district court. The district court in *Tak* had found that a preponderance of decisions deferred to the FCC's long-standing policy of prohibiting security interests in broadcast licenses. 138 B.R. at 572–74, citing *Stephens Industries, Inc. v. McClung,* 789 F.2d 386 (6th Cir.1986); *In re Merkley,* 94 F.C.C.2d 829, *recon. denied,* 56 R.R.2d 413 (1984), *aff'd sub nom. Merkely v. FCC,* 776 F.2d 365

(D.C.Cir.1985); *In re Smith,* 94 B.R. 220, 221 (Bankr.M.D.Ga.1988).

The Seventh Circuit found that FCC policy is determinative as to the enforceability of such security interests. "Whether to permit such interests is … a matter for the FCC rather than the courts to decide." *Tak,* 985 F.2d at 919.

## C. *The FCC Speaks*

On February 24, 1994, the FCC addressed the issue and stated that "a security interest in the proceeds of the sale of a license does not violate [FCC] policy." *In re Walter Cheskey,* 9 F.C.C.R. 986, 987 (February 24, 1994). In *Cheskey,* the FCC adopted the *Ridgely* reasoning and held that a creditor may have a security interest in an FCC license. *Cheskey,* 9 F.C.C.R. 986, ¶ 9. The FCC opinion explicitly rejects the *Tak* decision:

> The Court in *Tak* held that the [FCC] has a policy prohibiting a licensee from giving a security interest to a creditor in the proceeds of the sale of a license. It expressly declined to adopt the rationale of *Ridgely,* 139 B.R. 374. We respectfully conclude that the court erred in *Tak.* Moreover, [the FCC was] not a party to that action. The [*Tak*] court's ruling cannot bind the [FCC] to a policy which it does not have.

*Cheskey,* 9 F.C.C.R. at 987, note 8.

■ The FCC's ruling in *Cheskey* emphasizes the distinction between an unlimited security interest in a broadcast license and a security interest in the proceeds of such a license. While the former could potentially allow a creditor to interfere with the FCC's regulatory functions, the latter poses no such risk.

> When a licensee gives a security interest in the proceeds of a sale of the system, including the license, the licensee's creditor has rights with respect to the money or other assets the licensee receives in exchange for the system and license. The creditor has no rights to the license itself, nor can it take any action under its securi-

---

**2.** To the extent that the security interest attached to the Debtor's interest in an intangible asset, perfection of that security interest was accomplished by the Bank's filing of a UCC financing statement.

ty interest until there has been a transfer which yields proceeds subject to the security interest.

*Cheskey,* 9 F.C.C.R. at 987.

In affirming the bankruptcy court's decision in *Thomas,* the United States District Court for the Southern District of West Virginia cites *Cheskey* with approval, reiterating that creditors can hold a security interest in proceeds of a broadcast license. *In re Thomas Communications,* 166 B.R. 846 (S.D.W.Va.1994).

### D. The Bank's Security Interest is Enforceable

◼ This Court adopts the holding and reasoning of the *Thomas* and *Ridgely* decisions. The *Tak* reasoning, grounded primarily on the presumed policy of the FCC, is substantially weakened now that the FCC itself has rejected the holding and disavowed such a policy in its *Cheskey* decision.

◼ In upholding the validity and enforceability of the Bank's security interest, this Court expressly agrees with the distinction, discussed in *Ridgely, Thomas,* and *Cheskey,* between the right to hold or transfer a broadcast license and the right to receive and pledge proceeds if, with FCC approval, the license is sold. The right to transfer a broadcast license is a right between the FCC and the licensee. No pledge of the license as security for a loan can interfere with the FCC's regulatory power. Thus, a creditor who obtains a security interest in a license cannot foreclose on that interest and take over the right to broadcast. Only the FCC may determine that right in the exercise of its regulatory power. *See Ridgely,* 139 B.R. at 379.

◼ Once the FCC approves a sale and grants the buyer the right to hold the license, public regulatory functions are not impacted by the pledge of the sale proceeds. Accordingly, the right to receive the proceeds of an approved sale is a private right that a party may pledge to its creditor. Thus, the Court concludes that the Bank's security interest in the proceeds of the Debtor's FCC license does not violate FCC policy and is enforceable.

The Court will enter a separate order granting summary judgment in favor of Jefferson Bank and a final judgment directing the Debtor to turnover all proceeds of the sale of its assets to the Bank.