HATCHETT, Circuit Judge:
 

 In this appeal, we hold that a creditor may hold a valid security interest in the proceeds from the sale of a Federal Communications Commission (FCC) broadcasting license. We reverse.
 

 FACTS
 

 Beach Television Partners (BTP) was a Florida general partnership that owned and operated two independent television stations. Orix Credit Alliance, Inc. (Orix) financed virtually all of BTP’s broadcasting equipment, and to secure repayment, BTP granted Orix a security interest in all of its personal property including two FCC broadcasting licenses. On August 8,1990, BTP filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. After the bankruptcy court converted the bankruptcy filing to a liquidation under Chapter 7, the trustee for BTP requested and the FCC approved the sale of the two broadcast licenses to private parties for approximately $140,000.
 

 On September 18,1992, Orix moved that it be paid the proceeds from the sales. On January 26, 1993, the bankruptcy court denied Orix’s motion, ruling that Orix did not have a valid security interest in the proceeds from the sale of the FCC broadcast licenses. On Orix’s appeal, the district court affirmed the bankruptcy court’s decision. This appeal ensued after the district court denied Orix’s motion for a rehearing based on new case law.
 

 ISSUE
 

 This appeal presents only one issue for our review: whether a creditor may hold a valid security interest in the proceeds resulting from the sale of an FCC broadcasting license.
 

 DISCUSSION
 

 Prior to 1927, the private sector controlled the allocation of broadcast frequencies.
 
 See Red Lion Broadcasting Co. v. FCC,
 
 395 U.S. 367, 375-76, 89 S.Ct. 1794, 1798-99, 23 L.Ed.2d 371 (1969) (discussing the development of federal communications law). Legislators soon realized, however, that “broadcast frequencies constituted a scarce resource” and thus the government should regulate allocations. The Federal Communications Act of 1934 (the Act) commissioned the FCC to fulfill this role. 47 U.S.C. § 301
 
 et seq.
 
 Section 307 of the Act vests in the FCC the exclusive authority to license the use of broadcasting frequencies for radio and television stations. 47 U.S.C. § 307. In order to grant a license, the FCC must determine that the transfer will serve the public interest, convenience, and necessity. 47 U.S.C. § 310(d). Thus, a licensee may not transfer or assign the license without the express permission of the FCC. 47 U.S.C. § 310(d).
 

 
 *537
 
 Based upon the FCC’s exclusive authority under the Act to control the transfer of broadcast licenses, courts have traditionally held that licensees have no true ownership interest in their broadcast licenses.
 
 See FCC v. Sanders Bros. Radio Station,
 
 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940) (noting that the Act prevents a person from holding a property interest in a broadcast license);
 
 also see Stephens Industries, Inc. v. McClung,
 
 789 F.2d 386 (6th Cir.1986) (noting that the FCC consistently has held that licensees do not own their broadcast licenses). Because section 9-203(1) of the Uniform Commercial Code (UCC) requires an ownership interest in the underlying asset prior to the assignment of a security interest to a creditor, and courts typically have held that security interests in broadcast licenses are invalid, trustee contends that creditors holding such security interests possess no rights in the proceeds of the sale of the licenses.
 
 See In re Tak Communications, Inc.,
 
 985 F.2d 916 (7th Cir.1993);
 
 Stephens Industries v. McClung,
 
 789 F.2d 386 (6th Cir.1986).
 

 Nevertheless, recent FCC and court decisions have intimated that the courts’ previous blanket invalidation of all security interests in broadcast licenses may be unwarranted.
 
 See In re Cheskey,
 
 9 F.C.C.R. 986 (1994);
 
 In re Ridgely Communications,
 
 139 B.R. 374 (Bankr.D.Md.1992);
 
 State Street Bank & Trust v. Arrow Communications,
 
 833 F.Supp. 41 (D.Mass.1993);
 
 In re Thomas Communications,
 
 166 B.R. 846 (S.D.W.Va. 1994). We agree with the developing case law that recognizing a security interest in the proceeds from the sale of an FCC broadcasting license does not contravene the FCC’s authority to regulate broadcast frequencies.
 

 The courts that adopted the former view primarily relied upon and deferred to the FCC’s pronouncement in
 
 In re Radio KDAN, Inc.,
 
 111 F.C.C.2d 934 (1968) that a broadcast license “may not be hypothecated by way of mortgage, lien, pledge, lease, etc.”
 
 See also In re Twelve Seventy, Inc.,
 
 1 F.C.C.2d 965, 967 (1965) (“Credit cannot be extended in reliance upon the license as an asset from which the licensee’s obligations may be satisfied.... ”);
 
 but see Matter of Tak Communications, Inc.,
 
 985 F.2d 916, 918-19 (7th Cir.1993) (recognizing that FCC policy may change on this issue and that “whether to permit such interests is ... a matter for the FCC rather than the courts to decide”). Although such statements frequently arose in the context of dicta, they did evidence a clear FCC policy to prohibit the intrusion of commercial financing arrangements on the FCC’s ability to regulate the transfer of broadcast licenses.
 

 The FCC, however, has recently stated that a “security interest in the proceeds of the sale of a license does not violate Commission policy.”
 
 In re Cheskey,
 
 9 F.C.C.R. 986 (1994). This clarification apparently vindicates, the distinction between public and private rights adopted by the bankruptcy court in
 
 In re Ridgely Communications, Inc.,
 
 139 B.R. 374 (1992). The
 
 Ridgely
 
 court reasoned that because “rights between licensees and the Commission are to be distinguished from rights between the licensee and a private third party,” creditors can perfect a security interest in the private right of the
 
 proceeds
 
 from an FCC approved sale of a broadcast license.
 
 In re Ridgely,
 
 139 B.R. at 377-79. A security interest in the proceeds of an FCC-approved sale of a broadcast license in no manner interferes with the FCC’s authority and mandate under the Act to regulate the use of broadcast frequencies.
 

 Consequently, we hold that the district court erred in ruling that Orix did not have a valid security interest in the proceeds from the sale of the FCC broadcast licenses.
 

 Accordingly, we reverse the judgment of the district court and remand the case to the district court for further proceedings consistent with this opinion.
 

 REVERSED and REMANDED.