481 S.E.2d 722

**OHIO CELLULAR RSA LIMITED PART-NERSHIP, an Illinois Limited Partner-ship, Petitioner Below, Appellee**

v.

**The BOARD OF PUBLIC WORKS OF THE STATE OF WEST VIRGINIA, Respondent Below, Appellant.**

No. 23294.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1996.

Decided Nov. 18, 1996.

Darrell V. McGraw, Jr., Attorney General, Stephen B. Stockton, Barry L. Koerber, Jeffrey G. Blaydes, Assistant Attorneys General, Charleston, for Appellant.

Erica L. Horn, Bruce F. Clark, Jason P. Thomas, Stites & Harbison, Lexington, Kentucky, Craig M. Kay, John R. McGhee, Jr., Crystal S. Stump, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellee.

G. Thomas Battle, Trina L. Leone, Spilman, Thomas & Battle, Charleston, for Amici Curiae, Tri–State Cellular Partnership, Hardy Cellular Telephone Company, USCOC of WV RSA# 2, Inc., USCOC of Cumberland, Inc. and West Virginia Cellular Corp.

McHUGH, Chief Justice:

The appellant, the Board of Public Works, appeals the July 25, 1995 order of the Circuit Court of Logan County which granted summary judgment for the appellee, Ohio Cellular RSA Limited Partnership (hereinafter "Ohio Cellular"), by finding that the Board of Public Works wrongly included the value of Ohio Cellular's Federal Communications Commission license (hereinafter "FCC license") in its property tax assessment. For reasons explained below, we [1] affirm the July 25, 1995 order of the circuit court.

## I

In 1992 Ohio Cellular began providing cellular telephone services in Boone, Lincoln, Logan, Mingo, McDowell and Wyoming Counties, West Virginia. In order to engage in the cellular telephone business, Ohio Cellular was required to possess an FCC license pursuant to 47 U.S.C. § 301 (1994) of the Communications Act of 1934.[2] This license authorizes Ohio Cellular to provide cellular communication services over a specified band

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. The Communications Act of 1934, found in 47 U.S.C. § 151, et seq., gives the FCC broad authority to regulate "interstate and foreign commerce in communication by wire and radio so as to make available ... to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges[.]" 47 U.S.C. § 151 (1994), in relevant part.

on the electromagnetic spectrum for ten years subject to renewal. 47 U.S.C. § 307(c) (1994). Ohio Cellular uses but does not own any of the electromagnetic spectrum:

> It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio ... except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter.

47 U.S.C. § 301 (1994), in relevant part (emphasis added).

Both parties agree that the license is subject to statutory and regulatory restrictions. For instance, the license may not be transferred or sold without FCC approval. 47 U.S.C. § 301 et seq. Furthermore, the license may be revoked by the FCC if the licensee fails to operate in the "public interest, convenience and necessity." 47 U.S.C. § 307 and 47 U.S.C. § 301, et seq. However, the FCC may not revoke a license without providing the licensee due process. Id.

There are only a limited number of licenses. Originally, the FCC awarded some of the licenses to the traditional, wire-based telephone companies, and the other licenses were awarded through a lottery system to businesses who qualified for the licenses. See 47 U.S.C. § 308(b) (1994) (Stating that the FCC may prescribe by regulation the requirements regarding citizenship, character, finances, and technical ability which must be satisfied before a company will qualify to obtain a license). Those who acquired their licenses pursuant to the above two methods did so at a minimal cost.

Currently, however, the FCC does not use the above methods to award the licenses. Instead, the FCC sells these licenses to the highest bidders and keeps the profit pursuant to 47 U.S.C. § 309(j) (1994). These licenses may likewise be sold between private parties. However, any profits realized from such sale do not benefit the FCC. In 1992 Ohio Cellular purchased its FCC license for $15.7 million from a private company which had originally received the license from the FCC.

The case now before this Court arose once Ohio Cellular's property became subject to West Virginia's state property tax. Pursuant to W. Va. Code, 11-6-7 [1986], Ohio Cellular, as a telegraph or telephone company, is subject to assessment for property tax purposes by the Board of Public Works. W. Va. Code, 11-6-7(e) [1986] specifically requires Ohio Cellular to report to the Board of Public Works "its personal property of every kind whatsoever, including money, credits and investments, and the amounts thereof wholly held or used in this state, showing the amount and value thereof in each county[.]" [3] Furthermore, W. Va. Code, 11-6-9 [1986] requires the Tax Commissioner to review the returns filed by public utilities and determine the true and actual values of the utilities.

Pursuant to this statutory scheme, Ohio Cellular filed with the Board of Public Works an annual report pursuant to W. Va. Code, 11-6-7 [1986]. The values set forth in Ohio Cellular's report were the basis for the Tax Commissioner's 1994 property tax valuation. Upon tentatively valuing Ohio Cellular's property, the Tax Commissioner included the value of Ohio Cellular's FCC license in its valuation. The Board of Public Works affirmed this value on December 17, 1993. Ohio Cellular appealed the Board of Public Works' valuation to the Circuit Court of Logan County which held, as previously stated, that Ohio Cellular's FCC license was not taxable property, and, therefore, the value of the FCC license could not be assessed for property tax purposes.

**3.** The authority to tax a cellular telephone company's personal property is derived from *W. Va. Const.* art. X, § 1 which states, in pertinent part: "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law."

The result of the circuit court's holding was that the Board of Public Works' appraisal of the true and actual value of Ohio Cellular's West Virginia property was reduced from $1,585,618.00 to $477,273.00 for the tax year 1994 which resulted in the assessed value being reduced from $951,400.00 to $286,364.00.[4] It is this holding of the circuit court that the Board of Public Works now appeals.

II

■ At the outset we note that " '[a] circuit court's entry of summary judgment is reviewed *de novo.*' Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Jones v. Wesbanco Bank Parkersburg,* 194 W.Va. 381, 460 S.E.2d 627 (1995). The issue before this Court is whether an FCC license to provide cellular telephone services is subject to assessment for property tax purposes. The parties did not cite nor could we find any cases from other courts which have directly addressed this issue. Although this issue of first impression is easily stated, it is not so easily resolved. As will be discussed below, an FCC license is difficult to categorize.

The Board of Public Works asserts that the FCC license is intangible personal property which is subject to assessment for property tax purposes. Though the Board of Public Works concedes that Ohio Cellular does not have a property interest in the electromagnetic spectrum, it argues that Ohio Cellular nevertheless owns the "valuable, intangible right to use those airwaves in a for-profit, commercial enterprise." It is this right to use the airwaves, as represented by the possession of an FCC license, which constitutes a property right. Thus, the Board of Public Works concludes that the value of this right to use the airwaves is subject to assessment for property tax purposes.

Conversely, Ohio Cellular asserts that the right to use the airwaves, while valuable, does not confer a traditional property interest which is subject to a property tax. In-

stead, Ohio Cellular maintains that because the right to use the radio waves is heavily regulated and controlled by the federal government, it is more akin to a federal instrumentality and thus, cannot be a property interest subject to a property tax.

The case law which discusses the nature of the rights an FCC license confers on a licensee is sparse and confusing. In *In re Merkley,* 94 F.C.C.2d 829, 830 (1983) the FCC stated that it "has consistently held that a broadcast license, as distinguished from the station's plant or physical assets, is not an owned asset or vested property interest so as to be subject to a mortgage, lien, pledge, attachment, seizure, or similar property right." Notwithstanding the above implication in *Merkley* that a licensee has no property interest in an FCC license, the FCC has recently held that a creditor may have a security interest in the proceeds of the sale of an FCC license. *In re Application of Walter O. Cheskey,* 9 F.C.C.R. 986 (1994) (The FCC held that a primary creditor's security interest in the proceeds of sale of the FCC license during a bankruptcy proceeding did not violate FCC policy). *See also In re Atlantic Business and Community Dev. Corp.,* 994 F.2d 1069 (3rd Cir.1993) (The court held that the IRS was entitled to assert a lien for unpaid employment taxes against the proceeds of the sale of the FCC license in a Chapter 7 bankruptcy proceeding); *In re Beach Television Partners,* 38 F.3d 535, 537 (11th Cir.1994) (A creditor in a bankruptcy proceeding may hold a valid security interest in the proceeds from the sale of the FCC license); and *In re Thomas Communications, Inc.,* 161 B.R. 621, 626 (S.D.W.Va.1993), *aff'd* 166 B.R. 846 (S.D.W.Va.1994).

The United States Tax Court best summarized the issue in *Jefferson–Pilot Corp. v. Comm'n of Internal Revenue,* 98 T.C. 435, 445–46, 1992 WL 73091 (1992), *aff'd* 995 F.2d 530 (4th Cir.1993):

An FCC license 'is not a full-fledged, indefeasible property interest. But neither is it a non-protected interest, defeasi-

---

4. The assessed value is 60% of the market value. *See W. Va.Code,* 11–1A–3(a) [1986]. *W.Va.Code,* 11–1A–3(i) [1986] states that the terms "value,"

"market value," and "true and actual value" all have the same meaning.

ble at will.' *Orange Park Florida T.V., Inc. v. FCC*, 811 F.2d 664, 674 n. 19 (D.C.Cir.1987); *Reuters Ltd. v. FCC*, 781 F.2d 946, 950 n. 5 (D.C.Cir.1986); *L.B. Wilson, Inc. v. FCC*, 170 F.2d 793, 798, 802 (D.C.Cir.1948); see *WJR, The Goodwill Station v. FCC*, 174 F.2d 226, 234 (D.C.Cir. 1948). A broadcast license confers a property right on its owner, although a limited and defeasible one. *L.B. Wilson, Inc. v. FCC, supra* at 802.

The economic reality is that an FCC license represents a valuable asset to its holder. Because of technological limitations, only a limited number of FCC licenses may be assigned to a particular geographic region.... Consequently, an FCC license represents the valuable right of entry into the broadcasting market for a particular area. FCC licenses are, subject to approval by the FCC, bought and sold. They are treated as an asset of a bankruptcy estate. *In re Fugazy Exp., Inc.*, 124 Bankr. 426, 430 (S.D.N.Y.1991); see *In re Schnippel*, 121 Bankr. 784, 787 (Bankr. S.D.Ohio 1990).

(Citations and footnote omitted). The United States Tax Court further noted in *Jefferson–Pilot Corp.* that it had previously classified an FCC television license as a "capital asset," which according to the court in *Jefferson–Pilot*, "is, by definition, property." *Id.* at 446 (citing *Radio Station WBIR v. Comm'r*, 31 T.C. 803, 1959 WL 1119 (1959)). The FCC nevertheless has "retained the right to prescribe standards for the quality of the services provided [pursuant to the FCC license] and the equipment used and it exercises this right." *Id.* at 449. Consequently, if a licensee fails to comply with these standards its license could be revoked. *Id.*

The above discussion reveals that the FCC license is indeed difficult to categorize because it conveys a property interest to the licensee which is unlike any other property interest we have examined. It is clear that a licensee has some kind of property interest in an FCC license; however, the Communications Act of 1934, specifically, § 301, *et seq.* of 47 U.S.C., places significant restrictions upon the use and transfer of the FCC license.

The question remains, however, whether the property interest in the FCC license is the kind of property interest which is subject to assessment pursuant to our property tax statutes.

Chapter 11, article 6 of the *West Virginia Code* provides for the assessment of public service businesses for property tax purposes. As we previously noted, *W. Va.Code*, 11–6–7(e) [1986] specifically requires telephone companies to report for assessment their *"personal property* of every kind whatsoever, including money, credits and investments, and the amounts thereof wholly held or used in this state, showing the amount and value thereof in each county[.]" (emphasis added).

*W. Va.Code*, 11–5–3 [1961] defines personal property as it is used in Chapter 11 of the *Code*[5] as follows:

> The words 'personal property,' as used in this chapter, shall include all fixtures attached to land, if not included in the valuation of such land entered in the proper land book; all things of value, moveable and tangible, which are the subjects of ownership; all chattels, real and personal; all notes, bonds, and accounts receivable, stocks and other intangible property.

(in relevant part). This definition of "personal property" does not expressly include an FCC license.

■■■ Because the statute is not clear on its face as to whether an FCC license is personal property as that phrase is defined in *W. Va.Code*, 11–5–3 [1961], we must resort to the rules of construing a statute. *See Doran & Associates, Inc. v. Paige*, 195 W.Va. 115, 117, 464 S.E.2d 757, 759 (1995). In doing so, we are mindful that

> ' " '[t]he primary object in construing a statute is to ascertain and give effect to the intent of the legislature.' Syl. Pt. 1, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 2, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984).' Syllabus point 2, *Lee v. West Virginia Teachers Retirement Board*, 186 W.Va. 441, 413 S.E.2d 96 (1991).

---

**5.** Chapter 11 of the *West Virginia Code* is entitled "Taxation."

Syl. pt. 2, *Francis O. Day Co., Inc. v. Director, D.E.P.,* 191 W.Va. 134, 443 S.E.2d 602 (1994). However, we are also mindful that unclear "tax statutes are generally to be construed in favor of the taxpayer and against the taxing authority." *Consolidation Coal Co. v. Krupica,* 163 W.Va. 74, 80, 254 S.E.2d 813, 816 (1979). *See also Doran,* 195 W.Va. at 120, 464 S.E.2d at 762; *Pa. and W. Va. Supply Corp. v. Rose,* 179 W.Va. 317, 319, 368 S.E.2d 101, 103 (1988); *Wooddell v. Dailey,* 160 W.Va. 65, 68, 230 S.E.2d 466, 469 (1976); *In re Estate of Evans,* 156 W.Va. 425, 430, 194 S.E.2d 379, 382 (1973); 3A Norman J. Singer, *Sutherland Statutory Construction* § 66.01 (5th ed. 1992) ("[T]ax laws are to be strictly construed against the state and in favor of the taxpayer.").

*W. Va.Code,* 11-5-3 [1961] includes in its definition of "personal property" four kinds of property: (1) fixtures attached to land; (2) all things of value, moveable and tangible; (3) all chattels, real and personal; and (4) all notes, bonds, accounts receivable, stocks, and other intangible property. Clearly, an FCC license is not within either the first or second kinds of property as it is neither a "fixture attached to land" nor a "thing of value, moveable and tangible."

The third kind of property included in the definition of "personal property" is "all chattels, real and personal." *Id.* In a memorandum filed in the court below, the Board of Public Works asserted that an FCC license is like a "chattel real." We disagree.

Ordinarily, " '[i]n the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning.' Syl. Pt. 1, *Tug Valley Recovery Center, Inc. v. Mingo County Commission,* 164 W.Va. 94, 261 S.E.2d 165 (1979)." Syl. pt. 1, *Pennsylvania and West Virginia Supply Corp. v. Rose,* 179 W.Va. 317, 368 S.E.2d 101 (1988). A chattel real is defined as "[s]uch as concern real property, such as leasehold estates; interests issuing out of, or annexed to, real estate;.... An interest in real estate less than a freehold or fee." *Black's Law Dictionary* 236 (6th ed.1990). *See also* 63A Am.Jur.2d *Property* § 23 ("Chattels real are interests in real estate less than freehold ... [and] are to be

distinguished, on the one hand, from things which have no concern with the land, such as mere movables and rights connected with them, which are chattels personal, and on the other hand, from a freehold, which is realty." (footnotes omitted)); *Blair v. Freeburn Coal Corp.,* 163 W.Va. 23, 30, 253 S.E.2d 547, 552 (1979) (Stated that a coal tipple is a chattel real because "it is an interest in the real estate less than a freehold[.]"). Real property is defined as "[l]and, and generally whatever is erected or growing upon or affixed to land." *Black's Law Dictionary* 1218 (6th ed.1990). An FCC license does not concern real property. It involves the use of the electromagnetic spectrum. Consequently, it is not a chattel real.

Likewise, an FCC license is not a "chattel personal" that is, items that "are visible, tangible, and movable." 63A Am.Jur.2d *Property* § 22 (1984) (footnote omitted). *See also Black's Law Dictionary* 236 (6th ed. 1990) (Defines personal chattel as "[m]ovable things. Personal property which has no connection with real estate."). Though the right to use the electromagnetic spectrum may be valuable, such right is not a tangible, movable item, and thus, is not within the meaning of a chattel personal.

The fourth kind of property discussed in the definition of personal property includes "notes, bonds, and accounts receivable, stocks and other intangible property." *W. Va.Code,* 11-5-3 [1961]. Clearly, an FCC license is not a note, bond, account receivable, or stock. However, we must ascertain whether the legislature intended for an FCC license to be included within the phrase "other intangible property."

One rule of construction which we find to be helpful in construing the meaning of the phrase "other intangible property" found in *W. Va.Code,* 11-5-3 [1961] is the rule known as *ejusdem generis.* We explained this rule in syllabus point 2 of *The Vector Co., Inc. v. Board of Zoning Appeals of the City of Martinsburg,* 155 W.Va. 362, 184 S.E.2d 301 (1971):

'In the construction of statutes, where general words follow the enumeration of particular classes of persons or things, the

general words, under the rule of construction known as *ejusdem generis,* will be construed as applicable only to persons or things of the same general nature or class as those enumerated, unless an intention to the contrary is clearly shown.' Point 2, Syllabus, *Parkins v. Londeree, Mayor,* 146 W.Va. 1051 [, 124 S.E.2d 471 (1962)].

In *Greene Line Terminal Co. v. Martin,* 122 W.Va. 483, 10 S.E.2d 901 (1940) we applied this rule of construction to a phrase that is similar to the one at issue in the case before us.

More specifically, in *Greene Line Terminal Co.* the Court was confronted with construing the phrase "[a]ll money and all notes, bonds, bills and accounts receivable, stocks and any other intangible personal property ..." found in the 1933 version of *W. Va.Code,* 11–8–5 which concerns the classification of property for levy purposes.[6] Although *W. Va.Code,* 11–8–5 [1933] is not at issue in the case before us, the phrase "[a]ll money and all notes, bonds, bills and accounts receivable, stocks and any other intangible personal property ..." found in that *Code* section is similar to the phrase "all notes, bonds, and accounts receivable, stocks and other intangible property" which appears in *W. Va.Code,* 11–5–3 [1961]'s definition of personal property. As previously indicated, *W. Va.Code,* 11–5–3 [1961] is at issue in the case before us. Thus, our analysis in *Greene Line Terminal Co.* of *W. Va.Code,* 11–8–5 [1933] (concerning the classification of property for levy purposes) is instructive in construing the meaning of "personal property" found in *W. Va. Code,* 11–5–3 [1961], the statute presently at issue. *Cf.* syl. pt. 3, *Boley v. Miller,* 187 W.Va. 242, 418 S.E.2d 352 (1992) (" 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975).")[7]

The issue in *Greene Line Terminal Co.* was whether a leasehold, which was subject to assessment for property tax purposes, should be assessed as a Class I property or as a Class III or IV property. The appellant, the lessee, wanted the lease classified as Class I property because the levy rate was lower than on Class III or IV property. *W. Va.Code,* 11–8–5 [1933], in relevant part, defines Class I property as "[a]ll money and all notes, bonds, bills and accounts receivable, stocks and any other intangible personal property[.]"

The appellant, in *Greene Line Terminal Co.* argued that a lease, as intangible personal property, was included in the phrase "other intangible personal property," which phrase followed "all money and all notes, bonds, bills and accounts receivable, [and] stocks[.]" Applying the rule of *ejusdem generis,* this Court concluded that although a lease is intangible personal property it was not the type of intangible personal property classified under Class I property in *W. Va. Code,* 11–8–5 [1933]:

> The phrase 'other intangible personal property', appearing at the end of paragraph three under Class I, follows immediately after the specific mention of money, notes, bonds, bills, accounts receivable, and stocks. *Under the familiar rule of ejusdem generis the general or inclusive phrase must be deemed to apply to things of the class or group specifically denominated and enumerated.* This rule of statutory construction is applicable except where a context is such as to manifest a legislative intention to give to the general words a more extensive meaning and effect.... *Other than money, the things enumerated in the statutory paragraph under consideration are of the same family or group, namely, evidences of debt, and they are not inclusive of all the members of that family or group,* as for example, due-bills, certificates of time-deposit, and recitals of indebtedness in deeds, mortgages or deeds of trust where no note for the debt has in fact been given. So, *we are impressed that the general language used*

---

**6.** *W. Va.Code,* 11–8–5 was amended in 1939 and again in 1961. The amendments do not affect our discussion in this opinion.

**7.** Chapter 11 of the *West Virginia Code* addresses the subject of taxation. *See* n. 5, *supra.*

*at the end of paragraph three under Class I was intended to apply to other evidences of indebtedness, and not to matters of a different nature.*

*Greene Line Terminal Co.,* 122 W.Va. at 491–92, 10 S.E.2d at 906 (emphasis added and citation omitted). The Court went on to state that

> [t]hough a leasehold is intangible personal property—a chattel real—it possesses characteristics peculiar unto itself; it constitutes an interest in land, whereas other intangibles do not; it is immobile, and thereby differs from other intangibles such as evidences of debt, which may be moved with the person. . . . Chattels real, therefore, are not to be grouped with intangibles evidencing indebtedness, which are chattels personal.

*Id.* at 492–93, 10 S.E.2d at 906 (citations omitted).

In the case before us, *W. Va.Code,* 11–5–3 [1961] includes in its definition of "personal property" "all notes, bonds, and accounts receivable, stocks and *other intangible property.*" (emphasis added). The phrase "other intangible property" follows immediately after the specific mention of "all notes, bonds, and accounts receivable, [and] stocks," manifesting the legislature's intent that the general phrase "other intangible property" includes other evidence of indebtedness or value, that is things of the same family or group of the things specifically mentioned.[8] An FCC license is not evidence of value or of indebtedness and therefore, pursuant to the rule of *ejusdem generis* is not of the same family as "notes, bonds, and accounts receivable, [and] stocks[.]" Thus, even if an FCC license is intangible personal property, the legislature did not intend for it to be included in the definition of "personal property" that is subject to property taxation.[9]

Accordingly, we hold that "personal property" which is defined in *W. Va.Code,* 11–5–3 [1961] as "all fixtures attached to land . . .; all things of value, moveable and tangible, which are the subjects of ownership; all chattels, real and personal; all notes, bonds, and accounts receivable, stocks and other intangible property[,]" does not

---

8. We recognize that *Greene Line Terminal Co., supra,* did not address the fact that "stocks" are not evidence of indebtedness. However, "stocks" are documentary evidence of value as are "notes, bonds, and accounts receivable." Thus, "stocks" are of the same family as "notes, bonds, and accounts receivable." Conversely, an FCC license, while it may be valuable, does not represent documentary evidence of either value or indebtedness. Instead, an FCC license represents the right to use a specified band on the electromagnetic spectrum.

Moreover, the legislature has specifically mentioned stocks in chapter 11 of the *West Virginia Code,* which concerns taxation, and thus, has clearly expressed its intention to include stocks as property which is taxable. *See, e.g., W. Va. Code,* 11–5–1 [1961] ("[S]hares of capital stock owned by residents in this State in corporations actually located in other states, and whose property is taxed by the laws of such other states . . ." shall not be assessed as personal property); *W. Va.Code,* 11–5–6 [1933] (When the stock of a company is assessed to that company, the person owning the stock shall be required to list that stock for assessment). However, chapter 11 does not mention an FCC license nor has the legislature, in its personal property taxation statutes, expressly addressed licenses of the nature of the FCC license before us. Moreover, we find no expression of legislative intent to include such licenses within the gambit of taxable intangible personal property.

9. Ohio Cellular also argues that the assessment of the value of the FCC license for property tax purposes "violates the Supremacy Clause of the United States Constitution because it imposes a direct tax on a federal license and substantially interferes with a federal activity." Generally, those state *ad valorem* tax measures which have survived constitutional scrutiny "have been tax measures imposed on an isolated possessory interest or on a beneficial use of United States property. The perished have been tax measures levied on the property itself." *United States v. Nye County Nevada,* 938 F.2d 1040, 1042 (9th Cir.1991), *cert. denied,* 503 U.S. 919, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992). In spite of this general rule, the Supreme Court of the United States has noted that the doctrine of federal immunity from state taxation "has become a 'much litigated and often confused field,' . . . one that has been marked from the beginning by inconsistent decisions and excessively delicate distinctions." *United States v. New Mexico,* 455 U.S. 720, 730, 102 S.Ct. 1373, 1380–81, 71 L.Ed.2d 580, 589 (1982) (citation omitted). This Court, however, need not delve into these delicate distinctions because we have determined that the legislature did not intend for an interest such as that given by an FCC license to be the kind of intangible personal property that is subject to assessment for property tax purposes.

include within its definition an FCC license which authorizes a person to provide cellular communication services. Thus, an FCC license authorizing a person to provide cellular communication services is not personal property which is subject to assessment for personal property tax purposes under *W. Va.Code,* 11–6–7(e) [1986].[10]

## III

■ In summary, we have concluded that the value of Ohio Cellular's FCC license is not to be included in the assessment of Ohio Cellular's property because the FCC license does not fall within *W. Va.Code,* 11–5–3 [1961]'s definition of "personal property" which is subject to assessment for property tax purposes. Thus, we affirm the July 25, 1995 order of the Circuit Court of Logan County.[11]

Affirmed.

RECHT, Judge, sitting by temporary assignment.

10. On November 6, 1984, an amendment to *W. Va. Const.* art. X, § 1a was ratified. The amendment, in effect, requires the legislature to more precisely define intangible personal property that is subject to property taxation:

Notwithstanding the provisions of sections one and one-b of this article, household goods and personal effects, if such household goods or personal effects are not held or used for profit, and *all intangible personal property shall be exempt from ad valorem property taxation: Provided, that intangible personal property may be made subject to such taxation only to the extent provided by the legislature by general law not inconsistent with this section.*

*W. Va. Const.* art. X, § 1a, as amended, in relevant part (emphasis added). The amended version of *W. Va. Const.* art. X, § 1a goes on to outline restrictions on the legislature's authority to subject intangible personal property to property taxation. However, both parties have informed this Court that the legislature has not to date implemented the amended version of *W. Va. Const.* art. X, § 1a. Thus, the parties did not raise the issue of how the amended version of *W. Va. Const.* art. X, § 1a affects their case in this appeal. Given the complex nature of the technological changes which have occurred since "intangible personal property" was defined in *W. Va.Code,* 11–5–3, we strongly encourage the legislature to examine and implement the amended version of *W. Va. Const.* art. X, § 1a.

11. The Board of Public Works in its brief raised an assignment of error regarding the circuit court's ruling that both the cost and income approaches must be used to value Ohio Cellular's property. However, because this issue was inadequately briefed by the Board of Public Works, we do not address it on appeal. *See Estep v. Brewer,* 192 W.Va. 511, 513, 453 S.E.2d 345, 347 (1994). *See also State v. Flint,* 171 W.Va. 676, 679 n. 1, 301 S.E.2d 765, 768 n. 1 (1983); *Addair v. Bryant,* 168 W.Va. 306, 320, 284 S.E.2d 374, 385 (1981).