# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia *ex rel.*
Gary Mullins, Petitioner**

**vs)  No. 16-0046**  (Kanawha County  13-P-625)

**Jim Rubenstein, Commissioner,
West Virginia Division of Corrections,
Respondent**

**FILED**

**March 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Gary Mullins, by counsel Matthew A. Victor, appeals the December 23, 2015, order of the Circuit Court of Kanawha County that denied his amended petition for writ of habeas corpus. Respondent Jim Rubenstein, Commissioner, West Virginia Department of Corrections, by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2011, a grand jury indicted petitioner on the charges of kidnapping, second-degree robbery, and fraudulent schemes. A jury trial was conducted in February of 2012. At trial, the State's evidence showed that, on January 11, 2011, while the victim, George Jacobs, who was then eighty-four years old, was in the driver's seat of his vehicle in the Kroger's parking lot in Kanawha City, petitioner jumped into the passenger seat and demanded $2,000. The victim testified at trial that he had never seen petitioner before. When the victim responded that he did not have $2,000 with him, petitioner grabbed him by the arm and instructed him to drive to his (the victim's) home to retrieve the money. The victim testified that he felt scared, threatened, and unable to leave his vehicle.

Upon arriving at his home, the victim gave petitioner $1,800. However, petitioner was not satisfied and, in a threatening manner, demanded more money. The victim wrote petitioner a check for $200.00. Petitioner and the victim then drove to the victim's bank to cash the check at the drive-thru window. After cashing the check, the victim gave petitioner the $200.

The victim drove petitioner to the Kroger's parking lot after leaving the bank. Before exiting the vehicle and driving away in his truck, petitioner told the victim not to tell the police

1

or his family about what had transpired. The victim testified that although he looked to see if there was a police officer inside the Kroger's store, he did not find one. According to the victim, he did not immediately inform the police or his family about this incident because he was ashamed of what had occurred.

The victim also testified regarding three additional incidents in which the victim either showed up at the victim's home or contacted him demanding money. On one occasion, the victim obtained a $2,000 cash advance on his credit card for petitioner. On another occasion, petitioner and the victim went to the victim's bank where the victim cashed a $450 check and gave the money to petitioner. While at the bank, petitioner signed a promissory note whereby he agreed to repay the victim $4,600. It is undisputed that petitioner never repaid any of this money to the victim. The final incident occurred when petitioner contacted the victim and advised him that the new truck petitioner purchased needed tires. The two proceeded to go to Sears department store in Charleston where the victim felt "forced" to purchase tires for petitioner. The tires cost $531. That same day, petitioner demanded that the victim cash another check at his bank for $500. Of this amount, petitioner took $300 and left the victim $200. Petitioner testified that he did not immediately report these incidents to the police or his family because he was afraid of petitioner, who threatened to "fix" him "if something went wrong."[1]

The jury acquitted petitioner on the charges of second degree robbery and fraudulent schemes and convicted him of kidnapping,[2] for which he was sentenced to a determinate term of twenty-five years in the penitentiary. Petitioner's post-trial motions for a new trial or acquittal were denied as untimely.

Petitioner filed a direct appeal of his conviction on March 27, 2013. In his appeal, petitioner argued that the trial court erred in admitting hearsay evidence and in excluding petitioner from a critical stage of the proceedings—i.e., when the jury sent a note to the trial judge during jury deliberations; that the evidence was insufficient to convict; that the State presented false and misleading evidence to the grand jury; that the State made improper remarks; and cumulative error. This Court addressed each of petitioner's arguments, found there to be no error, and affirmed his kidnapping conviction. *See State v. Mullins*, No. 12-1460 (W.Va. Supreme Court, October 18, 2013) (memorandum decision).

On September 25, 2014, petitioner filed an amended petition for writ of habeas corpus. In addition to alleging that he received ineffective assistance of counsel at trial, petitioner alleged exactly the same assignments of error that he raised in his direct appeal. In its December 23, 2015, order denying petitioner's request for habeas relief, the circuit court, following an omnibus hearing, determined that six of the seven assignments of error raised by petitioner were "fully and finally litigated" in his direct appeal "and as such are inappropriate for habeas corpus review." *See* W.Va. Code § 53-4A-1. With regard to the remaining alleged error—ineffective assistance of trial counsel—the circuit court concluded that petitioner failed to satisfy the two-

---

[1] The victim passed away the day after he testified.

[2] *See* W.Va. Code § 61-2-14a.

2

pronged test established in *Strickland v. Washington*, 466 U.S. 688 (1984), and adopted by this Court in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) — that

> [i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the [following] two-pronged test . . .: (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*Id.* at 6, 459 S.E.2d at 117, syl. pt. 5.

Petitioner now appeals.

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

As noted above, the circuit court determined that all but one of the assignments of error raised in petitioner's request for habeas relief were previously raised in his direct appeal and were fully and finally adjudicated therein. *See Mullins.* We agree with the circuit court that these alleged errors were not again reviewable in the habeas proceeding and, likewise, decline to address them in the present appeal. *See Bowman v. Leverette*, 169 W.Va. 589, 591, 289 S.E.2d 435, 437 (1982) (stating that West Virginia Code § 53-4A-1(a) "allows for post-conviction habeas corpus review 'if and only if' the contention or contentions raised by the petitioner have not been previously and finally adjudicated or waived in the petitioner's criminal trial and appeal or in previous habeas corpus proceedings.").

The sole remaining issue involves petitioner's claim that his trial counsel was ineffective and that counsel's performance satisfied the two-prong test of *Strickland/Miller.* Petitioner argues that defense counsel failed to investigate the viable facts and circumstances, failed to interview and/or call specific witnesses, performed ineffective cross-examination of the State's witnesses, failed to make certain objections, failed to argue pre-trial motions, missed the deadlines for the filing of post-trial motions, failed to adequately communicate with petitioner, and, overall, displayed apathy toward him.

In considering petitioner's arguments, we observe that

> the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another. This result is no accident, but instead flows from deliberate policy decisions this Court and the United States Supreme Court have made mandating that "[j]udicial scrutiny of counsel's performance must be highly deferential" and prohibiting "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance[.]" *Strickland*, 466 U.S.

3

at 689–90, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95. In other words, we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. Keeping in mind that petitioner was acquitted of two of the three counts set forth in the indictment, we now address the merits of petitioner's ineffective assistance claim.

Petitioner argues that defense counsel failed to properly investigate various aspects of the case, including failing to request video surveillance footage from Kroger's the day of the kidnapping, which petitioner argues would have shown that the victim, after dropping off petitioner in the store parking lot, proceeded to shop "as if nothing [had] happened." Petitioner also argues that defense counsel should have interviewed other shoppers who were at Kroger's at that time. According to petitioner, this failure to investigate was deficient under an objective standard of reasonableness. We disagree. The evidence at trial revealed that video footage from Kroger's was no longer available by the time the kidnapping was reported to police.[3] As for defense counsel's decision not to seek out other shoppers, counsel testified at the habeas hearing that he could not "imagine that there would have been something notable about [the victim] on that particular date that anybody would have remembered seeing him." Indeed, given that some eight months had passed between the kidnapping and the filing of the police report, we find that it was not objectively unreasonable for defense counsel to forego this line of investigation. Thus, we conclude that the circuit court did not err in determining that petitioner failed to satisfy the first prong of the *Strickland/Miller* test—that defense counsel's actions were deficient under an objective standard of reasonableness. *See* Syl. Pt. 5, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995) (holding that "[i]n deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.").

Next, petitioner argues that defense counsel was ineffective in his failure to investigate and call witnesses to establish the alleged "relationship" between petitioner and the victim, which petitioner characterizes as a "friendship." In this regard, petitioner contends that defense

---

[3] The kidnapping occurred on January 11, 2011, but was not reported until late August of that year.

4

counsel failed to investigate additional financial loans allegedly made by the victim to petitioner[4] and to call as a trial witness the bank employee who drafted the promissory note previously described herein. At the habeas hearing, the employee testified that she did not feel that the victim was under any duress or other pressure to sign the document.[5] Similarly, petitioner argues that defense counsel should have called petitioner's sister as a witness. At the habeas hearing, petitioner's sister testified that when she called the victim to ask him to post petitioner's bond following his arrest, the victim told her that he and petitioner were good friends and that he agreed to post petitioner's bond.[6] She further testified that the victim was not afraid of petitioner and that he was upset that petitioner was in jail. It is petitioner's argument that, given the testimony of these witnesses at the habeas hearing, this evidence would have cast a reasonable doubt as to the veracity of the victim's trial testimony and the allegation of kidnapping.

We find that defense counsel's decision not to call these witnesses was a matter of trial strategy to which this Court will defer. "What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. Indeed, it is difficult to imagine how the testimony of these witnesses would have been relevant to whether petitioner kidnapped the victim as neither was present in the Kroger's parking lot when petitioner entered the victim's vehicle, demanded money, and forced the victim to drive to his home. The victim's testimony at trial established the elements of the crime. Petitioner, the only other person present in the vehicle, elected not to testify. Given these circumstances, we find that defense counsel's decision not to call the bank employee and petitioner's sister as trial witnesses was not "deficient under an objective standard of reasonableness." *Id.* at 6, 459 S.E.2d at 117, at syl. pt. 5, in part.[7]

Petitioner also argues that defense counsel was ineffective for electing not to cross-examine the victim regarding inconsistent statements he made to police regarding whether he was restricted in his movement during the kidnapping. Specifically, petitioner argues that the

---

[4] Petitioner failed to present evidence of other loans at the habeas hearing despite his criticism of defense counsel's failure to investigate such loans.

[5] In his brief, petitioner represents that the bank employee also testified that the men were "nothing but cordial." Based upon our review of the hearing transcript, we find that this is a mischaracterization of the employee's testimony. In fact, the employee did not remark on the interaction between the victim and petitioner when they came to the bank.

[6] Petitioner did not, in fact, post petitioner's bond.

[7] Petitioner also contends that the victim's daughter-in-law and other unidentified witnesses should have been called to testify at trial because they would have been able to corroborate petitioner's claim that he and the victim were friends. Given that petitioner did not call the victim's daughter-in-law to testify at the habeas hearing nor did he identify the witnesses he claims would have testified in his defense, petitioner's contention that these witnesses would have substantially aided his case is highly speculative and in no way establishes that defense counsel's failure to call these witnesses was objectively deficient.

victim's testimony at trial that petitioner went inside the victim's home after they drove there from Kroger's was inconsistent with his statement to police that petitioner stayed outside the residence while the victim went inside to retrieve money. Petitioner argues that defense counsel's failure to cross-examine the victim on this inconsistency would have contradicted his claim that he was held against his will. We find no error.

At the time of trial, the victim was at least eighty-five years old and, as revealed in the trial transcript, cried while describing the events that gave rise to the kidnapping charge. The Court is not inclined to second-guess defense counsel's decision not to then cross-examine the victim on a factual discrepancy particularly given the victim's unrefuted testimony that he felt scared and threatened when petitioner appeared uninvited in the front seat of the victim's vehicle, demanded money, and made the victim feel he was unable to leave his vehicle. This Court has stated that "[t]he method and scope of cross-examination 'is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel.' *Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir.1983), *cert. denied,* 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984)." *Daniel,* 195 W.Va. at 328, 465 S.E.2d at 430. Thus, we conclude that petitioner has failed to show that defense counsel's decision not to cross-examine the victim was deficient under an objective standard of reasonableness.

Finally, petitioner argues that defense counsel was ineffective in failing to insist that the trial court engage in a meaningful colloquy with petitioner regarding his decision not to testify; failing to file a motion to "address[ ] the issue of 'other bad acts' under Rule 404(b) of [the] West Virginia Rules of Evidence;" failing to present any witnesses in his case-in-chief; failing to timely file post-trial motions; and failing to adequately communicate with petitioner. Petitioner's arguments are half-hearted, not fully developed, and lack factual and legal substance. This Court has repeatedly cautioned that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996). *See also State v. Lilly,* 194 W.Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (noting that "appellate courts frequently refuse to address issues that appellants . . . fail to develop in their brief" and that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal"). As we stated in *State, Dept. of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" (*quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). *See also Ohio Cellular RSA Ltd. Partnership v. Board of Pub. Works of West Virginia*, 198 W.Va. 416, 424 n.11, 481 S.E.2d 722, 730 n.11 (1996) (refusing to address issue on appeal that had not been adequately briefed). Thus, petitioner's arguments are deemed to be abandoned and will not be considered on appeal.[8]

---

[8] Petitioner also argues that defense counsel was ineffective in (1) failing to address "the issues of blatantly false information submitted to the grand jury;" (2) failing to object to the prosecuting attorney's comments that petitioner was a "con artist" who preys on the elderly; (3) failing to object to alleged hearsay testimony by an investigating officer; and (4) failing to "notice" that petitioner was absent when the jury asked a question during deliberations. As (continued . . .)

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 10, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker.

---

already established, these alleged errors were previously considered and adjudicated by this Court in petitioner's direct appeal and were found not to be meritorious. Petitioner's argument in this appeal that defense counsel's actions in this regard are nonetheless legitimate grounds for an ineffective assistance claim is, at best, an attempt to re-adjudicate these alleged errors through a different lens. Because these alleged errors were previously fully and finally adjudicated, they will not be considered herein. *See* W.Va. Code § 53-4A-1(a).

7