In the Matter of TAK COMMUNICATIONS, INCORPORATED, Debtor–Appellee.

Appeal of NEW BANK OF NEW ENGLAND, N.A., individually and as agent for Chemical Bank, the New Connecticut Bank and Trust Company, N.A., Heller Financial, Incorporated, the Bank of Nova Scotia, Ameritrust Company National Association, and Norwest Bank Minnesota, National Association.

No. 92–1961.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1992.

Decided Feb. 9, 1993.

Roy L. Prange, Quarles & Brady, Madison, WI, and Peter A. Fine (argued), Choate, Hall & Stewart, Boston, MA, for appellant.

David G. Walsh, Michael B. Van Sicklen (argued), and Joan L. Eads, Foley & Lardner, Madison, WI, for appellee.

Brady C. Williamson, Margaret J. Vergeront (argued), Timothy F. Nixon, Lafollette & Sinykin, Madison, WI, and Ralph W. Hardy, Jr., and Thomas J. Hutton, Dow, Lohnes & Albertson, Washington, DC, for debtor-appellee.

Before MANION and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ILANA DIAMOND ROVNER, Circuit Judge.

The secured creditors of Tak Communications, Inc. ("Tak") have asserted liens against the broadcasting licenses issued to Tak by the Federal Communications Commission ("FCC").[1] After Tak filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code, these creditors

---

1. These liens arise from revolving credit and security agreements between Tak (as well as another corporation that later merged with Tak, Tak–WGRC) and Bank of New England, N.A. ("Bank of New England"), Chemical Bank, The Connecticut Bank and Trust Company, N.A. ("Connecticut Bank"), Heller Financial, Inc., The Bank of Nova Scotia, Ameritrust Company National Association ("Ameritrust"), and Norwest Bank Minnesota, National Association ("Norwest") (collectively, "the Banks"). The Banks extended a $175 million line of credit to Tak, and Tak currently owes the Banks $169 million in principal and over $9 million more in accrued interest. Certain entities have succeeded to the Banks' rights under the agreements. The claims of Ameritrust and Norwest have been assigned to TCW Special Credits and Cargill Financial Services Corporation, respectively. Bank of New England and Connecticut Bank were closed by the Federal Deposit Insurance Company (the "FDIC"). Their rights were transferred to two "bridge" banks pursuant to the Financial Institutions Reform, Recovery and Enforcement Act—New Bank of New England, N.A. ("New Bank of New England") and New Connecticut Bank and Trust Company, N.A. These banks eventually were dissolved, and the FDIC was appointed receiver. Chemical Bank has succeeded New Bank of New England as agent for the Banks in this action.

Both Tak and the official committee of Tak's unsecured creditors have contested the validity of the Banks' liens.

initiated an adversary proceeding in the bankruptcy court seeking to have their liens declared valid. The bankruptcy court ultimately granted summary judgment in favor of Tak and its official committee of unsecured creditors, concluding that the FCC prohibits creditors from holding security interests in broadcast licenses. *In re Tak Communications, Inc.,* No. MM 11–91–00031, Adv. No. 91–0078–11, 1991 WL 330935, 1991 Bankr. Lexis 1407 (Bankr. W.D.Wis. Oct. 8, 1991). In a carefully reasoned opinion, Chief Judge Barbara B. Crabb of the Western District of Wisconsin affirmed the bankruptcy court's decision. *In re Tak Communications, Inc.,* 138 B.R. 568 (W.D.Wis.1992). Tak's secured creditors now appeal that ruling. We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. Because the appeal presents solely questions of law, our review is *de novo. See In re Rivinius, Inc.,* 977 F.2d 1171, 1175 (7th Cir.1992).

The secured creditors mount two principal challenges to the district court's ruling. First, they contend that contrary to the conclusion of both the bankruptcy and district courts, FCC policy does not preclude third-party lenders from holding security interests in broadcast licenses. Second, they argue that the courts below lacked jurisdiction to assess FCC policy and to decide whether the secured creditors' interests are contrary to that policy.

Having considered all of the arguments raised by the secured creditors, we conclude that the district court's reasoning was correct in all respects. Accordingly, we affirm for the reasons set forth in Judge Crabb's opinion.[2] We write further only to briefly discuss an opinion issued after Judge Crabb ruled: *In re Ridgely Communications, Inc.,* 139 B.R. 374 (Bankr.D.Md.1992).[3] Because the district court did not have an opportunity to consider *Ridgely's* rationale, and because the secured creditors have based a substantial portion of their arguments here on *Ridgely,* a few words about that opinion are in order.

*Ridgely* does lend limited support to the secured creditors' position. Like the appellants in this case, one of Ridgely Communications' creditors, Ameritrust Company National Association ("Ameritrust"), was a fully secured creditor and held a first priority lien on all of the debtor's tangible and intangible assets. When the debtor's two radio stations (including the broadcasting licenses) were sold, Ameritrust claimed entitlement to the bulk of the proceeds. Relying on FCC policy, the debtor objected, contending that Ameritrust's lien reached no further than the "hard" assets of the stations themselves and did not extend to the proceeds of the licenses. The bankruptcy court disagreed:

> [A] creditor may perfect a security interest in a debtor's F.C.C. broadcasting license, limited to the extent of the licensee's proprietary rights in the license vis a vis private third parties. The right of the licensee crucial to this decision (and the only right recognized by the Court in this case) is the right of the creditor to claim proceeds received by the debtor licensee from a private buyer in exchange for the transfer of the license to that buyer. The right to receive such proceeds is a private right of the licensee that constitutes a proprietary interest in which a creditor may perfect a security interest.

*Id.* at 379. The court emphasized that its holding was narrow and did not confer a broad right to assert blanket security interests in broadcasting licenses or to use a secured interest to force the debtor to

---

**2.** We note that at oral argument, counsel for the secured creditors disavowed any contention that the district court had failed to reach any of the issues presented to it.

**3.** The *Ridgely* court originally had issued only a brief unpublished order before Judge Crabb ruled in this case. *See* 138 B.R. at 572 (citing *In*

*re Ridgely Communications, Inc.,* No. 89–5–1705–JS, 1991 WL 332643, 1991 Bankr. Lexis 1921 (Bankr.D.Md. Nov. 20, 1991)). Several weeks after Judge Crabb issued her decision, however, the bankruptcy court issued a supplemental opinion setting forth in detail its findings of fact and conclusions of law. 139 B.R. 374.

transfer the license to the creditor or a third party. *Id.*[4]

*Ridgely* discussed Judge Crabb's opinion at some length and found it to be overbroad. 139 B.R. at 380. In the bankruptcy court's view, by refusing to recognize any security interest in a broadcasting license, Judge Crabb went too far in attempting to vindicate FCC policy and overlooked the duty of the bankruptcy court to assess the relative rights of debtors and creditors. Although the bankruptcy court seemed to agree with Judge Crabb that federal courts have jurisdiction to assess the validity of a lien asserted against the debtor's estate in light of federal law, in its view she applied "the wrong federal law." *Id.* According to the *Ridgely* court, had Judge Crabb followed cases holding that broadcasting licenses qualify as property of the estate within the meaning of section 541(a) of the Bankruptcy Code, *see id.* at 377–78, she would have acknowledged a limited right in the secured creditor to the sale proceeds of the licenses. *Id.* at 380. Her decision not to recognize even such a circumscribed right, therefore, was based upon an implicit assumption—and in the bankruptcy court's view, an erroneous one—that broadcasting licenses do not qualify as property of the estate. *Id.*

We decline to adopt the rationale of *Ridgely* for two reasons. First, contrary to *Ridgely's* interpretation, Judge Crabb did not reject the notion that a broadcasting license may fall within the broad range of assets that qualify as property of the estate. Indeed, she *expressly* assumed that it *did* constitute property of the estate. *See* 138 B.R. at 576 (citing *In re Fugazy Express, Inc.,* 114 B.R. 865 (Bankr. S.D.N.Y.1990), *aff'd,* 124 B.R. 426 (S.D.N.Y.1991) (holding that the debtor's

interest in a broadcasting license constitutes property of the estate), *appeal dismissed for want of jurisdiction,* 982 F.2d 769 (2d Cir.1992)). Second, the fact that a license of this sort may constitute property of the estate within the meaning of the Bankruptcy Code does not necessarily mean that a creditor may hold a security interest in the license. *See In re Smith,* 94 B.R. 220, 221–22 (Bankr.M.D.Ga.1988) (holding that a broadcasting license was property of the estate but not subject to a security interest).

Whatever the practical benefits might be to creditors in permitting these interests, even to the limited extent permitted by *Ridgely,* we agree with the district court that the FCC has consistently and unequivocally refused to recognize such interests. No clearer statement of the FCC's position can be found than the Commission's remark in *In re Twelve Seventy, Inc.,* 1 F.C.C.2d 965, 967 (1965): "Credit cannot be extended in reliance upon the license as an asset from which the licensee's obligations may be satisfied...." *See also Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir.1986); *Smith,* 94 B.R. at 221. It may be true, as Tak's secured creditors suggest, that the FCC has shown some willingness to relax its stance on this subject. *See In re Bill Welch,* 3 F.C.C.R. 6502, 6503 (1988) (approving for-profit sale of a permit for construction of a cellular telephone facility on ground that relevant provisions of the Communications Act of 1934 "do[ ] not bar the for-profit sale to a private party, subject to prior Commission approval, of whatever private rights a permittee has in its license") (footnotes omitted).[5] However, as evidenced by its recent comments regarding a pending rulemaking inquiry, the FCC has not yet gone so far as

---

**4.** Because *Ridgely* recognized a security interest only in the proceeds from the sale of a license, the case lends only partial support to the secured creditors' position here. There has been no sale of Tak's licenses and, as of the date of oral argument in this case, no such sale was contemplated.

**5.** *But see also In re Omega Cellular Partners,* 5 F.C.C.R. 7624 (Mobile Services Div.1990) (noting that a financial commitment letter purport-

ing to grant the creditor of a cellular phone license applicant a future security interest in the broadcast license was improper: "[i]t is well established that a license is not an asset of the licensee and does not give any property rights in the license itself, that the Commission does not recognize a security interest in a license, and that credit cannot be extended in reliance upon the license as an asset from which a licensee's obligations may be satisfied").

to abandon its policy precluding creditors from holding security interests in broadcasting licenses. *See* Investment in the Broadcast Industry, 57 Fed.Reg. 14684, 14685 ¶ 11 (April 22, 1992) (to be codified at 47 C.F.R. pt. 73) ("The Commission historically has taken the view that its rule prohibiting sellers from retaining a reversionary interest and its policy prohibiting third party security interests were based upon statutory provisions prohibiting the grant of ownership interests in the spectrum and the assignment by licensees of their interests in a license without prior Commission approval."). Whether to permit such interests is, as the parties agree, a matter for the FCC rather than the courts to decide.

With these added comments, we affirm on the basis of the district court's opinion, 138 B.R. 568.

AFFIRMED.