146 F.3d 746
 82 A.F.T.R.2d 98-5276, 36 UCC Rep.Serv.2d 199,
98 Cal. Daily Op. Serv. 5466,
98 Daily Journal D.A.R. 7625,
12 Communications Reg. (P&F) 1188
 MLQ INVESTORS, L.P., a Delaware limited partnership,
Plaintiff-Appellee,
and
Robert O. Franklin, Creditor,
v.
PACIFIC QUADRACASTING, INC., a California corporation, Defendant,
and
Wallace A. Heusser, Defendant-Appellant.
 No. 96-16556.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1998.
Decided July 13, 1998.
 
 David R. Jenkins, Motschiedler, Michaelides & Wishon, Fresno, CA, for defendant-appellant.
 Patricia H. Lyon, French, Lyon & Associates, San Francisco, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of California; Oliver W. Wanger, District Judge, Presiding. D.C. No. CV-94-05413-OWW/DLB.
 Before: SNEED, KOZINSKI, and THOMPSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Wallace A. Heusser is an owner and guarantor of several corporations that defaulted on loans from MLQ Investors' ("MLQ") predecessor in interest. In a receivership action commenced by MLQ, a court-appointed receiver sold all the assets of the corporations' radio stations. Heusser appeals the district court's orders directing the receiver to distribute to MLQ all the proceeds from the sale, including proceeds from the sale of the radio stations' Federal Communications Commission ("FCC") broadcast licenses.
 
 
 2
 Because we find that a lender may perfect a security interest in the proceeds from a radio station's broadcasting license and that MLQ perfected its security interest in the debtor's intangible property prior to the filing of tax liens by the Internal Revenue Service ("IRS"), we affirm the district court's judgment.
 
 I.
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 In late 1988, the corporate owners of several radio stations entered into a loan agreement with MLQ's predecessor in interest. The loan documents purported to create a security interest in the station owners' intangible personal property, including all FCC broadcast licenses, to the extent permitted by law. In the event of default, the lender was authorized to obtain a judgment of a court of competent jurisdiction enabling it to sell the collateral and apply the proceeds to the outstanding debt.
 
 
 4
 Between 1988 and 1994, the station owners defaulted on the loans and failed to pay taxes to the IRS. MLQ's predecessor in interest perfected its security interest under the loan documents in December 1988 and January 1989, and subsequently filed continuation statements. The IRS' first tax lien on the station owners' property arose in 1991. The station owners debt to MLQ exceeded the combined value of the owners' assets.
 
 
 5
 In 1994, MLQ filed suit against the station owners and two guarantors, including Heusser, for breach of contract, foreclosure of a security interest, and breach of guarantees. MLQ also sought the appointment of a receiver and injunctive relief. In May 1994, the district court appointed a receiver and issued a preliminary injunction authorizing the receiver to perform his duties. The parties stipulated that the proceeds were to be distributed according to bankruptcy law and that the case would be referred to a magistrate judge for all purposes, including the issuance of final orders.
 
 
 6
 On November 15 and 22, 1994, the district court entered orders authorizing the receiver to sell all the assets of the radio stations at private sale, after securing FCC approval for transfer of the broadcast licenses. On December 1, 1994 and January 5, 1995, the district court entered orders directing the receiver to disburse the sales proceeds to MLQ.
 
 
 7
 The receiver dutifully disbursed the sales proceeds to MLQ, and on April 5, 1996, the district court entered an order approving the receiver's Final Report of Administration and Accounting ("Final Report"). A stipulation and order dismissing the case was entered on July 2, 1996. Heusser filed a notice of appeal on July 31, 1996.
 
 II.
 STANDARD OF REVIEW
 
 8
 We review the district court's determination of questions of law de novo. See TorresLopez v. May, 111 F.3d 633, 638 (9th Cir.1997).
 
 III.
 DISCUSSION
 A. The Timeliness of Appeal
 
 9
 As a threshold matter, MLQ argues that the receiver's Final Report constituted a final order that resolved all substantive issues in the case. As a result, Heusser's failure to appeal within 60 days of the April 5 filing of the report deprives this court of jurisdiction to review the disbursement orders entered earlier in the case. We find this argument has no merit.
 
 
 10
 The Final Order terminated the receivership, but it did not dispose of all of MLQ's claims-such as MLQ's claim for breach of guarantees. Moreover, the district court did not enter judgment on the claims under Fed.R.Civ.P. 54(b). The court did not "terminate the action as to any of the claims or parties" under the rule and, as a result, Heusser was barred from appealing the court's disbursement orders until the entire case was dismissed on July 2, 1996. See Chacon v. Babcock, 640 F.2d 221, 222 (9th Cir.1981). The timely appeal was then filed on July 31, 1996. Therefore, this court has jurisdiction to review the disbursement orders.
 
 
 11
 B. Perfecting Security Interest in a Broadcasting License
 
 
 12
 Heusser argues that a debtor cannot create a voluntary security interest in an FCC broadcasting license because doing so would be inconsistent with federal laws that limit the transfer of such licenses. However, this argument is directly contrary to the holding of In re Ridgely Communications, Inc., 139 B.R. 374, 379 (Bankr.D.Md.1992), which held that a creditor may perfect a security interest in a debtor's FCC broadcasting license to the extent that the creditor seeks to protect its interest in the proceeds of the debtor's license. In reaching this result, the bankruptcy court recognized a "public/private" distinction between a licensee's right to transfer its license (a "public" right between the FCC and the licensee which is governed by the FCC) and the licensee's right to receive remuneration for a transfer (a "private" right between two parties). See id. at 378-79. In other words, the FCC may prohibit security interests in licenses themselves because the creation of such an interest could result in foreclosure and transfer of the license without FCC approval. Such approval is necessary to regulate the airwaves in the public interest. No such public interest is implicated, however, by a security interest in the proceeds of licenses, which does not grant the creditor any power or control over the license or the segment of the broadcast spectrum it represents. The FCC has explicitly adopted this reasoning. See In re Cheskey, 9 F.C.C.R. 986, 987 (1994) (holding that licensee may give security interest in the proceeds of sale of license, but not in the license itself).
 
 
 13
 The district court in the present case followed the reasoning of In re Ridgely and In re Cheskey and held that MLQ had a perfected security interest in the proceeds of the sale of the FCC broadcasting licenses. The reasoning of these cases is sound, and while the issue they present is one of first impression in this circuit, analogous authority supports the district court's conclusion. See, e.g., Freightliner Mkt. Dev. Corp. v. Silver Wheel Freightlines, Inc., 823 F.2d 362, 369 (9th Cir.1987) (holding that a creditor may perfect a security interest in proceeds of sale of transportation operating authorities where security agreement and financing statement listed "general intangibles" as part of security). Although the Seventh Circuit has ruled that a creditor may not hold a security interest in an FCC license, the court based its conclusion on the FCC's former opposition to such interests. See In re Tak Communications, Inc., 985 F.2d 916, 918 (7th Cir.1993). Because the FCC explicitly repudiated both that policy and In re Tak in In re Cheskey, 9 F.C.C.R. at 987 & n. 8, we do not find In re Tak persuasive. See Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124, 1134-35 (9th Cir.1988) (en banc) (we need not follow circuit precedent that had been based on a prior agency interpretation). Therefore, we find that the district court did not err in reaching its conclusion.C. MLQ's Security Interest and the IRS Tax Liens
 
 
 14
 Heusser argues, however, that even if MLQ had a security interest in the proceeds from the sale of the licenses, this interest did not arise, and therefore could not be perfected, until the licenses were sold. As a result, MLQ's security interest was junior to the IRS tax liens created prior to the sale of the licenses. We disagree.
 
 
 15
 Government licenses, as a general rule, are considered to be "general intangibles" under the Uniform Commercial Code, "i.e., personal property interests in which security interests may be perfected." In re Ridgely, 139 B.R. at 379. As discussed supra,In re Ridgely makes it clear that license holders have no property rights in the "actual broadcast frequencies themselves as against the federal government," 139 B.R. at 376, (citing In re Bill Welch, 3 F.C.C.R. 6502 (1988)). However, In re Ridgely and In re Cheskey stand for the proposition that licensees do have a proprietary right in the proceeds from a sale of a license, and may grant a security interest in those proceeds. See also In re Beach Television Partners, 38 F.3d 535, 537 (11th Cir.1994) (holding that a creditor has a valid security interest in the proceeds of an FCC-approved sale of a broadcast license).
 
 
 16
 Since the licensee has rights and interests in the license proceeds which include a limited right to pledge those proceeds as collateral, we see no reason why the proceeds should not be considered "general intangibles," therefore subject to perfection prior to sale. Indeed, a contrary outcome would mean that the distinction between private and public interests in FCC license proceeds, outlined in In re Ridgely and In re Cheskey, would have no meaning, and the private interests would be devoid of value. A security interest in proceeds that could not be perfected until after foreclosure and sale of the license would, in almost every circumstance, be primed by IRS liens and claims of other creditors. The fact that in the present case the actual dollar proceeds from the sale of the licenses were generated only after the sale-and thus after the tax lien filing, as well-is immaterial. "[N]early all forms of security must be reduced to cash before they pay off the debt secured thereby." See Peter F. Coogan, Tax Liens and the UCC, 81 Harv.L.Rev. 1369, 1385 (1968).[1]
 
 
 17
 It is undisputed that MLQ's security agreement with the debtor was entered into prior to the dates the IRS filed notices of its tax liens on the debtor's property. MLQ also filed the financing statements necessary to perfect the interest prior to the IRS filing of notices of its tax liens. Absent provision to the contrary, "priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.' " See United States v. McDermott, 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993), citing United States v. New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954).
 
 IV.
 CONCLUSION
 
 18
 A creditor may obtain a security interest in the proceeds of the sale of an FCC license, and such an interest constitutes a "general intangible" that may be perfected prior to sale of the license. Because MLQ perfected its security interest in the debtor's "general intangibles" before the IRS filed its tax liens, MLQ's interest prevails.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 MLQ's perfected interest in the debtor's "intangibles" is distinguishable from a security interest in "after acquired property." Under Uniform Commercial Code § 9203(1) & (2), such interests are "generally not considered perfected when the financing statement is filed, but only when the security interest has attached to particular property upon the debtor's acquisition of that property." See United States v. McDermott, 507 U.S. 447, 452, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). In contrast, because the debtor in the present case enjoyed a limited right to pledge its FCC broadcasting licenses as collateral, MLQ's interest was "in existence" and "attached" at the time it filed its financing statement. See 26 U.S.C. § 6323(h)(1)