In re TRACY BROADCASTING CORPORATION, Debtor.

Spectrum Scan LLC and Joli Lofstedt, Plaintiffs,

v.

Valley Bank and Trust Co., Defendant.

Bankruptcy No. 09–27059 ABC.

Adversary No. 10–01130 ABC.

United States Bankruptcy Court, D. Colorado.

Oct. 19, 2010.

David M. Cantor, Louisville, KY, Jeremy Peck, John H. Bernstein, Kutak Rock LLP, Denver, CO, for Plaintiffs.

Donald D. Allen, Kenneth J. Buechler, Denver, CO, for Defendant.

### CORRECTED ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [1]

A. BRUCE CAMPBELL, Bankruptcy Judge.

This matter comes before Court on the Cross–Motions for Summary Judgment filed by Plaintiff, Spectrum Scan LLC ("Spectrum"), Plaintiff/Chapter 11 Trustee, Joli Lofstedt ("Trustee"), and Defendant Valley Bank and Trust Co. ("Bank"). The Court having reviewed the Motions, the materials submitted in support thereof, and the file in this matter, finds and concludes as follows.

#### Background

Tracy Broadcasting Corporation ("Debtor") operates an FM radio station pursu-

---

1. This Order corrects a typographical error in line 5 of the first full paragraph on page 2 of the Court's September 30, 2010 Order (Docket # 34). It is identical in all other respects.

ant to a license issued by the Federal Communication Commission ("FCC"). Prior to filing its bankruptcy case, the Debtor obtained a loan from the Bank, pledging, among other things, its "general intangibles" to secure its payment obligations to the Bank. The Bank has filed a secured claim in the amount of $910,000. Spectrum obtained a pre-petition judgment against the Debtor and is an unsecured creditor in the Debtor's Chapter 11 case. Spectrum commenced this adversary proceeding for a determination of the extent of the Bank's security interest. Spectrum asserts, in its claim for relief under 11 U.S.C. § 506, that the Bank's security interest does not extend to the FCC license, nor to any "proceeds" thereof. Spectrum also asserts that the Bank's security interest in the license and/or proceeds was not properly granted and/or perfected, and is thus avoidable under 11 U.S.C. § 544(a). Shortly after her appointment as Chapter 11 Trustee, the Trustee moved to be substituted as plaintiff on Spectrum's § 544 claim and to intervene as a co-plaintiff on Spectrum's § 506 claim. Both of these motions were granted.

In October, 2009, the Bank filed a motion for relief from stay in the Debtor's Chapter 11 case in order to enforce its security interest. The Trustee and Spectrum objected to the Bank's motion for relief from stay. After this adversary proceeding was filed, the Court bifurcated the issue of the validity of the Bank's security interest in the Debtor's FCC license from the motion for relief from stay, and ordered that it would be determined in this adversary proceeding. In May, 2010, the Trustee filed a motion to approve a settlement agreement in the main bankruptcy case which provided that the Bank would purchase all of the Debtor's assets, including the Debtor's FCC license, for $1,050,000, subject to any higher and bet-

ter offer received by the Trustee at a public auction. The settlement agreement provided that, if it were the high bidder, the Bank could "credit bid" $950,000 of its secured claim against the purchase price. Spectrum objected to the settlement, and the Court declined to approve it. The Court's Order denying approval of the settlement agreement was based, in part, on the pending dispute over the extent of the Bank's security interest in the Debtor's FCC license and any proceeds thereof. The parties thereafter agreed to submit the matter on simultaneous cross-motions for summary judgment.

As set forth below, none of the material facts in this case are disputed. The parties are in agreement that the Bank has no valid security interest in the Debtor's FCC license itself. The case presents a question of law: does the Bank's security interest extend to "proceeds" received by the Trustee upon a future transfer of the Debtor's interest in the FCC license, where there was no contract for transfer of the license in existence at the time the Chapter 11 petition was filed?

### Summary Judgment Standards

Federal Rule of Civil Procedure 56(c), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v.*

*Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir.1991).

### Undisputed Facts

The following facts are undisputed:

1. The Debtor is a Nebraska corporation. *See, Corporate Resolution filed on August 19, 2009, Docket # 4 in Case No. 09–27059 ABC.*

2. On or about May 5, 2008 the Bank made a loan in the principal amount of $1,556,100.00 (the "Loan") to the Debtor. *See, Bank's Proof of Claim No. 7, in Case No. 09–27059 ABC ("Bank's POC").*

3. In connection with the Loan, Debtor executed a Promissory Note (the "Note") dated May 5, 2008. *See, Bank's POC.*

4. The Note was secured by a Commercial Security Agreement (the "Security Agreement"), executed by the Debtor and dated December 13, 2007. Under the Security Agreement the Bank was granted a security interest in, among other things, the Debtor's "general intangibles" and proceeds thereof. *See, Bank's POC.*

5. The Bank filed UCC–1 Financing Statements (the "Financing Statements") regarding the security interest granted to the Bank under the Security Agreement with the Secretaries of State for Colorado, Nebraska, and Wyoming. The Financing Statements listed the Debtor's "general intangibles" and proceeds, among other property, as the Bank's collateral. *See Bank's POC.*

6. At the time it executed the Security Agreement, the Debtor operated a radio station at Warren AFB Wyoming known as KMOR 92.9 FM, or KOLT, under a broadcast license (the "License") issued by the FCC.

7. On January 23, 2009, Spectrum obtained a judgment against the Debtor in the amount of $1,400,000. *See, Spectrum's Proof of Claim No. 3–1, in Case No. 09–27059 ABC.*

8. On August 19, 2009, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

9. At the time the Chapter 11 petition was filed, the Debtor had no pending agreement for sale or transfer of the License.

10. On February 16, 2010, the Court entered an Order appointing the Trustee as Chapter 11 Trustee of the Debtor's estate.

### Arguments of the Parties

#### Spectrum's Arguments

Spectrum asserts that the Bank does not have a security interest in the License or any proceeds generated from the sale of the License. Spectrum argues that according to 47 U.S.C. § 310(d), an FCC license is not a property right which may be pledged as collateral. Spectrum claims that the Bank has conceded in prior proceedings in the underlying bankruptcy case that the Bank does not have a security interest in the License itself. Spectrum then relies on § 9–315(c) of the Uniform Commercial Code ("UCC")[2], which states that a security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected, and § 9–102(a)(64)(A), defining "proceeds" as whatever is acquired upon disposition of collateral. Spectrum concludes that, if the Bank did not have a security interest in the License, it could not have a security interest in proceeds

---

**2.** The parties agree that the provisions of the Nebraska Uniform Commercial Code govern this case because the Debtor is a Nebraska corporation. All cites hereinafter to the

"UCC" refer to the Nebraska Uniform Commercial Code, Neb. Rev. St. U.C.C. § 1–101, *et seq.*

generated from the sale of the License. If the License is not "collateral," that which results from its disposition is not within the UCC definition of "proceeds." Furthermore, Spectrum contends that, even if the Bank could obtain a security interest in value the Debtor might receive in exchange for the License as a general intangible, UCC § 9–322 provides that any security interest would not attach to such general intangible until the Debtor's right to receive that value came into existence. Because § 552(a) of the Bankruptcy Code provides that property acquired by a bankruptcy estate is not subject to a pre-existing security interest, Spectrum asserts that the Bankruptcy Code prohibits the Bank from claiming a security interest in any value derived from disposition of the License that arises post-petition.

### Bank's Arguments

The Bank claims that an FCC license may be bifurcated into a set of "public rights" and a set of "private rights." The power to determine who may become the licensee and the duration and conditions of the license are "public rights" under a license. The Bank concedes that these "public rights" are the exclusive province of the FCC and that no property interest exists in the "public rights" granted under an FCC license that may be pledged as collateral. However, the Bank asserts that the "private rights" under an FCC license, consisting of the licensee's "proprietary interest" in future proceeds from an FCC-approved transfer of the license, may be pledged as collateral security for a loan. The Bank contends that its pre-petition security interest in the Debtor's general intangibles was sufficient to grant it a valid, perfected, security interest in the Debtor's "private rights" to obtain proceeds from a future assignment of the License. The Bank contends that its security interest in the Debtor's right to receive proceeds from a future sale of the License attached pre-petition, at the time the security interest in the Debtor's general intangibles was granted, thus § 552(b) of the Bankruptcy Code allows the Bank to claim a security interest in any proceeds from the License that come into existence post-petition.

### Trustee's Arguments

The Trustee's position in this adversary proceeding is somewhat unclear. The Trustee requests the Court to enter judgment in her favor and against the Bank on the issue of whether the Bank holds a perfected lien on the License or any proceeds from the sale of the License. In her Motion for Summary Judgment, the Trustee states that " § 552(a) [of the Bankruptcy Code] makes clear that [the Bank] cannot have a post-petition lien in any proceeds [of the License] because no such proceeds existed pre-petition." Attached to the Trustee's Motion for Summary Judgment and cited as authority for the Trustee's request for entry of judgment in her favor, however, is the Trustee's Settlement Motion in the underlying bankruptcy case in which the Trustee took the position that the Bank's security interest in the proceeds from the sale of the License was valid.

### Discussion

■ This case presents a narrow, but complex question of law which is dealt with inconsistently in reported case law. The Tenth Circuit Court of Appeals has not addressed the issue. The question implicates the differing policy considerations called into play by the FCC, the UCC, and the Bankruptcy Code. As a starting point, all of the litigants agree that an FCC broadcast license itself may not be subject to a security interest. This is settled law. An FCC license "as distinguished from a station's physical assets, is not subject to mortgage, security interest or lien." *Kidd*

*Communications v. FCC*, 427 F.3d 1, 5 (D.C.Cir.2005)(quoting *In re Merkley*, 56 R.R.2d 413, 416 (1984), *aff'd sub nom. Merkely v. FCC*, 776 F.2d 365 (D.C.Cir. 1985)). "[L]icenses 'provide for the use' of the spectrum and convey no ownership interest 'beyond the terms, conditions, and periods of the license'...." *In re Magnacom Wireless, LLC*, 503 F.3d 984, 990 (9th Cir.2007)(quoting 47 U.S.C. § 301). Because the FCC is charged with regulation of the airwaves in the public interest, the prohibition of security interest in licenses is necessary to prevent the foreclosure of such a security interest and transfer of the license without FCC approval. *MLQ Investors, L.P. v. Pacific Quadracasting, Inc.*, 146 F.3d 746, 748 (9th Cir.1998). The conclusion reached in these cases is compelled by the unambiguous statutory language of the Communications Act, that "[n]o ... station license, *or any rights thereunder*, shall be transferred, assigned or disposed of in any manner, ... to any person except upon application to the Commission." 47 U.S.C. § 310(d) (emphasis added).

Notwithstanding this settled law, several cases have recognized a limited right of a license holder to grant a security interest in the proceeds of an FCC-approved transfer of the license to a third party. See, *e.g., In re Ridgely Communications, Inc.*, 139 B.R. 374, 377 (Bankr.D.Md.1992), *MLQ Investors, L.P. v. Pacific Quadracasting, Inc.*, 146 F.3d 746, 748 (9th Cir. 1998), *In re Cheskey*, 9 F.C.C.R. 986 (1994). The reasoning of these decisions, and others similarly decided, is that the licensee's rights under an FCC broadcast license may be bifurcated into "public rights" and "private rights." The "public rights" encompass the licensee's right to

transfer its license, the licensee's relationship with the FCC, and the FCC's regulation of the licensee's use of the airwaves. The "private right" is the "right to receive remuneration for a transfer" of the license. *MLQ Investors*, 146 F.3d at 748. The grant of a security interest in the "proceeds" of the transfer of an FCC license does not impinge on the FCC's regulatory powers. These authorities reason,

> The [secured] creditor has no rights over the license itself, nor can it take any action under its security interest until there has been a transfer which yields proceeds subject to the security interest.

> Thus, when the creditor exercises his security interest, the licensee will no longer be holding the license.

*In re Cheskey*, 9 F.C.C.R. at 987.

For the purposes of this order, the Court assumes that these cases are rightly decided, though there has been no definitive ruling from the FCC itself,[3] and there are Circuit Court cases which seem to reject any security interest in any aspect of an FCC license. See, *In re Tak Communications, Inc.*, 985 F.2d 916 (7th Cir. 1993); *In re Airadigm Communications, Inc.* 519 F.3d 640, 653 (7th Cir.2008); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986). Therefore, the Court will presume that it is possible, at least in the absence of a bankruptcy, for a debtor to grant a security interest in its right to receive proceeds upon an FCC-approved transfer of its license.

■■■ This does not end the inquiry, however. It is at this point where the provisions and policies of the Bankruptcy Code intersect; specifically 11 U.S.C. § 552, which governs the effect of security

---

**3.** *In re Cheskey*, 9 F.C.C.R. 986 (1994) is a decision by a hearing officer within the Mo-

bile Services Division of the FCC.

interests granted pre-petition on property acquired by the debtor after a bankruptcy case is filed. Section 552(a) provides the general rule that any "property acquired by the estate after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." The primary purpose of § 552's invalidation of after-acquired property clauses is to facilitate the debtor's fresh start, rehabilitation, and reorganization. 5 Collier on Bankruptcy para. 552.01[1], at 552–4 (16th ed. 2010).

Section 552(b) of the Bankruptcy Code provides an exception to the general rule that security interests in after-acquired property are invalid. If the debtor entered into a pre-petition security agreement and "*if* the security interest ... extends to property of the debtor *acquired before the commencement of the case* and to *proceeds* ... of such property," then the security interest will extend to "such proceeds" acquired by the estate post-petition, "to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court ... based on the equities of the case, orders otherwise." (emphasis added).

The Bankruptcy Code does not contain a definition of "proceeds." Accordingly, most courts that apply § 552(b) refer to

the definition of "proceeds" in the UCC. *In re Bumper Sales, Inc.,* 907 F.2d 1430, 1437 (4th Cir.1990). Section 9–102(a)(64) of the UCC provides that "proceeds" means the following property:

(A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;

(B) whatever is collected on, or distributed on account of, collateral; [or]

(C) rights arising out of collateral....

The distinction between "after-acquired property," and "proceeds" of pre-petition property is sometimes not a clear one. Such is the case here. In the most simple analysis, anything received by the Debtor on account of a transfer of the License post-petition would not be "proceeds" under the UCC because the License itself could not be pledged as "collateral." If there is no security interest in the property itself, the argument goes, there can be no security interest in any "proceeds" thereof, because there is no disposition of "collateral." This is essentially the position taken by the district court in *In re Tak Communications, Inc.,* 138 B.R. 568, 577 (W.D.Wis.1992) when it stated that, "[T]he banks' 'limited' security interest in the proceeds from the sale of the license does not exist because the banks seek essentially to place a lien on the licenses, and that is not permitted by the FCC." [4]

4. The recent revisions to Article 9 of the UCC have eliminated this problem with respect to some state law restrictions on transfers of licenses or other similar property. Section 9–408(c) of the UCC now provides that restrictions on transfer in a rule of law, statute, or regulation are ineffective to the extent they "impair the creation, attachment, or perfection of a security interest." With no effective bar to the attachment of a security interest on a state-issued license, § 552(b) of the Bankruptcy Code would allow such a security interest to extend to proceeds received upon post-petition disposition of a license. *But see, In re Chris–Don, Inc.,* 367 F.Supp.2d 696

(D.N.J.2005) (liquor license not "personal property," in which a security interest could be granted; therefore § 9–408 did not apply to supercede state statute prohibiting liens on liquor licenses). In any event, comment 9 to the revised UCC § 9–408 is explicit that that section "does not override federal law to the contrary," and that it reflects an "important policy judgment that should provide a template for future federal law reforms." In the absence of any such reform of the Communications Act's prohibition on transfer of any interest in a broadcast license, the Court must confront the issue posed by § 552 of the Bankruptcy Code.

The contrary approach, illustrated by the case of *In re Media Properties, Inc.*, 311 B.R. 244 (Bankr.W.D.Wisc.2004), is that value received by the transferor of an FCC license, on account of the transfer of the license, is proceeds of the transferor's general intangible represented by the transferor's "private right" in the FCC license. In other words, such value is proceeds of the transferor's right to receive remuneration upon a future FCC-approved sale of its license. 311 B.R. at 249.

If, as this Court has presumed, it is possible to grant a security interest in the ability to receive value upon an FCC-approved sale of a broadcast license, then the approach of the District Court in *In re Tak* is not helpful. The Court must instead determine whether the Debtor's ability to receive value, contingent both on the existence of an agreement to transfer the License and upon the FCC's approval of that transfer, where there was in fact no agreement of any kind for transfer of the License prior to the filing of the Bankruptcy Case, was "property of the debtor acquired before the commencement of the case." If it was not, then § 552(a) of the Bankruptcy Code prevents the Bank's security from extending to any value received by the Debtor on account of any eventual sale of the License post-petition. Looked at in another way, the question is: did the Debtor have sufficient "rights in the collateral or the power to transfer rights in the collateral to a secured party," such as would be necessary for any security interest to attach under § 9–203 of the UCC, prior to filing its Chapter 11 case? [5]

The answer is no. The Court disagrees with the analysis of the *Media Properties* case. The Debtor's right to receive value for a transfer of its License did not exist prior to the filing of its Chapter 11 case because any such "right" was too remote and was subject to two contingencies. *See, Sims v. Jamison,* 67 F.2d 409 (9th Cir. 1933) (if future earnings can be said to have a potential existence, they are the subject of an agreement for a lien; but the lien does not attach until the wages come into existence). First, the Debtor would have to have an agreement to transfer the License, and second, the transfer would have to be approved by the FCC. Since neither contingency had occurred pre-petition (and, indeed, neither has occurred to date), the Debtor did not have a sufficient property interest in this contingency in order to transfer a security interest in it to the Bank. If such an agreement to transfer the License occurred and was approved by the FCC post-petition, the Bank's security agreement could attach to any fruits of such transfer, *but for* § 552(a)'s prohibition on security interests in after-acquired property.[6]

## Conclusion

Based on the foregoing analysis, the Court concludes that § 552(a) of the Bank-

---

5. Section 9–203(a) and (b) of the UCC provide that a security interest attaches when: (1) value has been given, (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral.

6. Accordingly, without bankruptcy, a different result would obtain. A floating lien in after-acquired property, i.e., the consideration paid for an FCC license (a general intangible), would be effective and enforceable. UCC § 9–204(a). But where the arrangement to transfer a radio station with its license is made after a bankruptcy case is filed, the fundamental bankruptcy policy, codified in § 552 of the Bankruptcy Code, prevails: property interests and value that arise from post-petition events or efforts of the bankruptcy trustee or debtor-in-possession belong to the bankruptcy estate, benefitting a reorganizing debtor and/or the general creditor body.

ruptcy Code prohibits the Bank's security interest from encumbering any value that may the estate may receive from any future transfer of the License. Accordingly, it is

ORDERED that Plaintiffs' Motions for Summary Judgment are GRANTED, and judgment will enter declaring that Defendant does not have a security interest in the License or any proceeds derived from a future transfer of the License; it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is DENIED.